STATE of Missouri, Respondent,

v.

John Wesley CHAMBERLAIN,
Appellant.

No. 12886.

Missouri Court of Appeals,
Southern District,
Division One.

March 10, 1983.

John D. Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

Terry M. McVey, Welman, Beaton, Williams & McVey, Kennett, for appellant.

TITUS, Judge.

Defendant was jury-convicted of first degree sexual assault (§ 566.040) [1] on his 15-year-old daughter, Faye, and in accordance with the verdict was sentenced to imprisonment for a term of seven years. Defendant appealed.

---

1. Statutory references are to RSMo 1978. Section 566.040–1 provides: "A person commits the crime of sexual assault in the first degree if he has sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old."

On Thanksgiving Day, November 26, 1981, defendant, his wife and their children resided in Cardwell. Faye spent the day with a relative in Arbyrd but left near 6 p.m. and went to a Cardwell home where she was told to go home immediately because her younger sister was ill.

Defendant had spent part of Thanksgiving afternoon in a Cardwell bar. Upon being advised of his daughter's illness, defendant left the bar and summoned an ambulance at 6:05 p.m. Defendant arrived home with the ambulance at 6:10 p.m. and the ambulance, carrying defendant's wife, ill daughter and two attendants, departed for a Kennett hospital at 6:20 p.m. and arrived there at 6:40 p.m.

█ Upon the departure of the ambulance from his home, defendant returned to the bar and borrowed the bartender's truck to provide transportation to the hospital. Unaware that Faye had returned home, defendant drove to Arbyrd looking for her. When informed Faye had gone home, defendant returned to Cardwell. This court may judicially notice the geographical location of towns in this state and the distances between them. Therefore, we note it is approximately four or five miles between Cardwell and Arbyrd. *State v. Vincent,* 582 S.W.2d 723, 725[3] (Mo.App.1979); *Walsh v. Table Rock Asphalt Construction Co.,* 522 S.W.2d 116, 118[1, 2] (Mo.App.1975).

When defendant arrived home, Faye said she did not want to go to the hospital and a brief argument ensued before Faye acquiesced to defendant's demands. En route to the hospital, defendant stopped for gasoline three miles from Cardwell. After leaving the filling station, so Faye testified, defendant drove down a side road, stopped the truck and under his threats made her disrobe. When defendant had done likewise, he had sexual intercourse with Faye before the pair proceeded to the Kennett hospital.

The ambulance driver testified that he and his partner, who was ministering unto the sick child, remained at the hospital until 7:40 or 7:45 p.m. before leaving and that neither defendant nor Faye had arrived at the hospital before their departure. This witness also stated that traveling at the legal speed limit it would take 20 to 25 minutes to drive from Cardwell to the Kennett hospital.

Faye recounted that defendant had been having intercourse with her since she "was thirteen" but that she hadn't said anything about it, except to her female cousin, because defendant "threatened me. He said if I ever mentioned it he would either hurt me or kill me." On December 2, 1981, after she said defendant had hit her in the eye, Faye called "the hot line ... the child abuse deal" and while she did not tell of the intercourse, "I told them that he was beatin' on me and stuff." She was taken to the juvenile judge on December 10, 1981, and told him of some of the acts of intercourse committed by defendant but not all "Cause it's embarrassing to me to even talk about it."

As may be expected, defendant denied ever having had intercourse with Faye. He testified that when he insisted that she accompany him to the Kennett hospital on Thanksgiving night, she finally agreed but told defendant "I'll go but you'll be sorry." Defendant's testimony, corroborated by his wife, was that Faye and her parents were into constant arguments concerning her conduct in frequenting taverns, etc. They said they let it be known to Faye that they disapproved of her absences from home for three or four days at a time and especially objected to her having, on one occasion, spent two weeks in Mississippi with a man. Faye acknowledged she and her parents had almost daily disputes and arguments anent her deportment and that she had told defendant she hated him.

█ "Certain fundamental tenets guide us in our review. The appellate court does not substitute its judgment for that of the jury. In reviewing the evidence in the light most favorable to the verdict, we are to determine whether there was substantial evidence from which the jury could reasonably find the issue in harmony with the evidence. The mere fact that contradic-

tions or inconsistencies exist in the testimony does not prevent it from being substantial evidence, for conflicts, inconsistencies and the weight to be given such testimony are for the jury to resolve.... The jury may 'believe or disbelieve all, part or none of the testimony of any witness,' ... and the testimony of a single witness despite inconsistencies may be sufficient to constitute substantial evidence." *State v. Williamson,* 595 S.W.2d 4, 7[1–4] (Mo.App. 1979), and cases there cited. Also, in determining the sufficiency vel non of the evidence to sustain a conviction, we must review to determine if there was sufficient substantial evidence to support the jury's verdict and must consider as true all evidence favorable to the state, including all reasonable inferences that may be drawn therefrom. *State v. Wade,* 535 S.W.2d 492, 495[3] (Mo.App.1976). We also note that the "[u]ncorroborated testimony of a prosecutrix will sustain a conviction of incest or rape, and it is only where her testimony is so unconvincing and contradictory as to cloud the mind of the court with doubts that her evidence must be corroborated." *State v. McElroy,* 518 S.W.2d 459, 462[8] (Mo.App.1975).

■ We first consider defendant's contention that the trial court erred in failing to sustain his motion for judgment of acquittal made at the close of the evidence and his motion for acquittal notwithstanding the verdict or for a new trial. Considering as true all evidence favorable to the state and all reasonable inferences flowing therefrom, we find, contrary to defendant's urgings, that the record contains ample evidence to support the jury's finding of guilt.

The ambulance driver testified he left defendant at his Cardwell home at 6:20 p.m. on the day in question, remained at the Kennett hospital until 7:40 or 7:45 p.m. and that defendant had not arrived at the hospital before he departed. The jury could have deduced from defendant's recountings of what he did after the ambulance left his house and before his arrival at the hospital, supra, that it would not have required more

than an hour and 20 or 25 minutes for him to accomplish his legitimate tasks and that some of that time could have been used in having intercourse with Faye as she so testified.

Faye's testimony was not conflicting and contradictory concerning the fact that defendant had sexual intercourse with her on the evening of Thanksgiving 1981. Conflicts or inconsistencies which may appear in her testimony to other matters go only to the weight and value of her testimony. We find nothing contrary to known physical facts and no impossibilities or unreasonableness in Faye's testimony at trial. From a careful reading of the record, we conclude the trial court did not err in failing to sustain defendant's motion for judgment of acquittal made at the close of the evidence or in not granting defendant's motion for acquittal notwithstanding the verdict or for a new trial.

■ We finally consider defendant's point relied on that the court nisi erred in not declaring a mistrial when the prosecuting attorney, in cross-examining defendant's wife, asked the following and nothing more: "Q. Wanda, did you ever wonder why Faye wouldn't stay home? A. No. Just cause she didn't wanna stay home, all she wanted to do was run around, that's the reason why she didn't wanna stay at home, cause we didn't want her to. Q. Did you ever think about, did it ever cross your mind and wonder why—Wanda, you love your husband? A. Yes. Q. Don't you believe he's a sick, sick man?" Defendant's counsel's objection because "it's totally irrelevant, no foundation for it," was sustained but his motion for a mistrial was denied.

■ Declaring a mistrial is a most drastic remedy to be employed to only incidents of grievous error. *State v. Silinzy,* 621 S.W.2d 114, 115[2] (Mo.App.1981). The decision of declaring a mistrial vel non rests within the discretion of the trial court whose decision will not be disturbed upon appeal unless it be found the trial court has abused that discretion. *State v. Helm,* 624 S.W.2d 513, 516[9–10] (Mo.App.1981). The

reason for this is that the trial court is in the better position to judge any prejudicial effect the trial incident complained of may have produced and the possibility of removing any prejudice that may have been engendered by action short of a mistrial. *State v. Connor*, 585 S.W.2d 294, 301[7] (Mo. App.1979).

■ In overruling the motion for mistrial we are confident the learned trial judge was aware of his prior reading of MAI– CR2d 2.02 to the jury wherein the jury was charged, inter alia, "A question is not evidence, and may be considered only as it supplies meaning to the answer" and "If the Court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been." A jury is presumed to have followed the court's instructions [*State v. Hunter*, 586 S.W.2d 345, 348[3] (Mo. banc 1979)] and where, as here, there is no contrary claim or showing the presumption stands.

Every error which occurs in the trial of a case does not ipso facto require the granting a defendant's request for a mistrial [*State v. O'Neal*, 618 S.W.2d 31, 35[2] (Mo.

1981)] and the function of this court is to determine whether, as a matter of law, the trial court erred in abusing its discretion in refusing to declare a mistrial. *State v. Gash*, 572 S.W.2d 240, 242[4] (Mo.App.1978). There is nothing in the record to suggest that the single inquiry in question had such a prejudicial effect that the court's prompt and unequivocal sustension of defendant's objection was not sufficient to counteract it. Moreover, it might be reasonably argued that the lone unanswered question of the prosecuting attorney could be viewed as having engendered jury sympathy for a defendant pictured as being "a sick, sick man."

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.