### STATE of Missouri, Respondent,

v.

### Joseph D. ENNA, Appellant.

#### No. WD 34330.

Missouri Court of Appeals,
Western District.

Jan. 10, 1984.

James L. Lyons, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Dan J. Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., SHANGLER, J., and TURNAGE, C.J.

PRITCHARD, Presiding Judge.

By the verdict of a jury, appellant was convicted of committing the crime of burglary in the first degree, § 569.160 (L.1977, S.B. No. 60, p. 662, § 1, eff. Jan. 1, 1979), and punishment was set by it at five years imprisonment. Upon evidence that appellant had two prior felony convictions, the court found him to be a persistent offender and enhanced his punishment to ten years imprisonment in the Division of Corrections.

Appellant's first point is that the trial court erred in denying his motion to suppress the pre-trial and in-court identification of him because the pre-trial identification was so impermissibly suggestive as to

give rise to a very substantial likelihood of irreparable misidentification.

On the pre-trial motion to suppress identification evidence, the victim, Katherine Spurney, was called as a witness. She testified that sometime after the burglary took place, over the weekend after June 26, 1981, she viewed some photographs brought to her by detective Shanks. She pointed out a photograph of appellant as being one of several showed to her. The detective had called her and asked if she could identify a person who had been in her house, to which she answered "Yes", and that she was positive. The detective arrived later and put the pictures on the kitchen table. He handed them to her and she spread them out on the table. "Q. But my question, more specifically, is did he indicate to you that he had a suspect in this particular group of photos that he wanted you to view? A. I can't remember his exact words but he apparently thought he had a suspect. I don't know that he told me he had a suspect, no. He asked me if I could identify the boy that was in my house from photographs, and I said yes; which I did." She picked out the individual who was in her house in about 5 to 10 seconds, and had no doubt about it. The officer told her who all of the boys were after she made his identification. On cross-examination, Mrs. Spurney testified that there was a great deal of similarity in the photographs. Detective Shanks never told her that the person who was in her house was in the set of photographs. Her identification was based upon having seen the boy before.

At trial, Mrs. Spurney testified that she was at home at 6400 Cherry on June 26, 1981, and caught a boy in her kitchen. Before that she had performed various chores and had gone to the basement to get her sheets. She put them in a dryer, and came up the stairway, finding the door locked at its top. She went out another door into the garage, then through a hallway to the kitchen where she encountered an intruder at the end of a counter. She asked him what he wanted. He did not answer but continued toward her. She then grabbed him by his shirt. There were large windows in the kitchen and it was very light from the sun. She got a good look at him as she held him, being about three inches from his face. The intruder pulled loose from her grasp, disappeared around a corner and went out the door, at which time Mrs. Spurney saw that he had a clear plastic glove on his hand, he being then about five or six feet away. She pointed out appellant in court as being the person in her house, and there was no objection to that testimony.

After appellant left the kitchen, Mrs. Spurney called the police and while they were there she found the drawers of a buffet were open, and a silver chest on the floor with a case knife on top of it. The desk had been gone through and boxes in the dressing room had been opened. She found a screen off in the garage, but the window there was still locked. After the police left, Mrs. Spurney went outside and found a red motorcycle helmet underneath the bushes, and a Yamaha 125 motorcycle with a still warm engine in the back yard. These items were not connected to appellant.

At trial, Mrs. Spurney again identified appellant from the group of photographs shown to her. She testified that she gave a description of the intruder to the police officer: "A. I told him that he was a late teen-ager, and he was well-built and he was blond and light-eyed. And pretty well-developed, I mean could have been a swimmer." He was not much taller than she. After Mrs. Spurney picked out the photograph, the officer told her it was of a Joseph Enna.

Detective Timothy Shanks contacted the victim on June 29th, after he had read the report. He interviewed her and showed her some photographs, State's Exhibits No. 2 through 7. He asked her if she thought she could identify the burglar, and then she made a selection.

 Since there was no objection to the in-court identification of appellant, his contention that it was based upon impermissible suggestiveness will be considered

under the plain error Rule 29.12(b). The impermissiveness is argued by appellant to be based upon the photographic procedures used by Detective Shanks. He attaches significance to Mrs. Spurney's pre-trial testimony that the detective "apparently thought he had a suspect. I don't know that he told me that he had a suspect, no." There is no positive evidence that the detective ever told her that he had a suspect, and certainly none that any person whose photograph was in the seven exhibited was a suspect. All that appears is that detective Shanks called Mrs. Spurney beforehand and asked her if she could identify a person who had been in her house, and she was then positive that she could. On arrival, the detective handed her the photographs, she spread them out on the table, and within 5 to 10 seconds, picked out the boy who was in her house. That identification was based upon her having seen the boy before.

The facts here do not even rise to those in the lineup case of *State v. Neely,* 637 S.W.2d 181, 182 (Mo.App.1982), where a Detective Dodson called two witnesses to a robbery, stating that he " 'wanted them to come down and look at a lineup, that the suspect fit the description of the person who committed the robbery.' " The court held in the *Neely* case that the statements of Dodson were neither inaccurate or unduly suggestive. See also *State v. Armbruster,* 541 S.W.2d 357, 361[4] (Mo.App. 1976), and cases cited, where the officer told the victim " 'that from the description I gave him of the robber Kelley thought he might be the one they had in custody and Kelley asked me if I would identify him' ", held not to be unduly suggestive so as to taint the in-court identification testimony.

■ Appellant next contends that the showing of six photographs to Mrs. Spurney, five of which he says bore little resemblance to her previous description of him, served to cause him to stand out as the person detective Shanks suspected, or believed, had committed the crime. There is no evidence that Shanks believed or suspected appellant to be the culprit. The record does not show that the photographs were not identical, but Mrs. Spurney further testified that they had a great deal of similarity. The photographs have been deposited in this court, and they have similarities of hair on two of them to appellant's. Those two persons, however, had mustaches. One photograph showed a person with curly hair. Two others showed the hair to be darker. In *State v. Pennington,* 618 S.W.2d 614, 620[14–16] (Mo.1981), it was said, "It is unreasonable to assume that the members of a lineup would be identical in appearance, and a dissimilarity alone in physical appearance is insufficient to establish an impermissible suggestiveness." See also *State v. Willis,* 577 S.W.2d 655, 657[1, 2] (Mo.App.1979), and cases cited.

■ Appellant next says that the photographs were mug shots which demonstrate that the pictured person(s) were criminals and were therefore more likely to have committed the crime in question. All of the photographs are obviously mug shots, but that fact does not show that among them appellant was the burglar, and there is no evidence that Mrs. Spurney knew they were mug shots (she testified that she did not look at the backs of the photographs upon which there were further descriptions of the persons shown).

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), although it was noted that there was some danger in showing a witness pictures of a number of individuals that he will make an incorrect identification, the court was unwilling to prohibit their employment. Instead the court held that each case must be considered on its own facts, and convictions will be set aside only if the photographic procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See the discussion of Simmons in *State v. Boswell,* 433 S.W.2d 556, 558 (Mo.1968), in which case there were three photographs (source not shown) exhibited to a victim of a robbery committed by three persons, whom she immediately identified as the culprits. There was also strong evidence of an independent source of identification of the

victim's opportunity to observe appellant for two hours. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), involved the identification from a single photograph by a trained police officer, held under the circumstances not to involve a very substantial likelihood of irreparable misidentification weighing the evidence of photographic identification against the factors in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

No case has been found which holds that there is a per se exclusion of evidence of photographs taken from police files, i.e. "mug shots", which are used in identification procedures. Rather, many cases at least tacitly approve that procedure, so long as there is no impermissible suggestiveness used. See, e.g., *State v. Boswell,* supra; *State v. Brown,* 460 S.W.2d 551, 553[1] (Mo. 1970); *State v. Gomillia,* 529 S.W.2d 892, 895, et seq. (Mo.App.1975); *Lane v. State,* 445 N.E.2d 965, 967[1] (Ind.1983); *Head v. State,* 443 N.E.2d 44, 54[7] (Ind.1982); and *Travison v. Jones,* 522 F.Supp. 666, 668[3, 4] (N.D.N.Y.1981). The admonition of *Simmons v. United States,* supra, 390 U.S., at page 383[1], 88 S.Ct. at Page 971, "This danger [of incorrect identification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized", is not here offended.

■ Although the photographic identifications are above held not to be impermissibly suggestive, there are five factors set forth in *Neil v. Biggers,* supra, adopted in *State v. Higgins,* 592 S.W.2d 151, 160[13, 14] (Mo. banc 1979) [appeal dismissed, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254], for consideration as to the reliability of the identification testimony. The factors are hereinafter italicized as they relate to the testimony: (1) Mrs. Spurney, the witness, had sufficient *opportunity to view* appellant at the time of the crime. She saw appellant in her kitchen for about two minutes, at one time within about three inches from his face as she was holding him by his shirt. See *State v. McGrath,* 603 S.W.2d 518, 521[4–6] (Mo.1980), holding that an eight second observation was not so brief that, as a matter of law, it precluded an opportunity to identify appellant and retain that identification; (2) Mrs. Spurney had a high *degree of attention* to the intruder in her kitchen. She asked him as to why he was in her house, with no response, and she was able immediately to give the police his description; (3) there is no evidence of the *accuracy of the prior description* (as to details), but Mrs. Spurney clearly remembered appellant's face; (4) the *level of certainty* by Mrs. Spurney *at the time of confrontation* is demonstrated. Prior to being shown the photographs, she was positive she could identify appellant. She did so immediately from the photographs, and she was no less uncertain at the in-court identification; (5) the *length of time* between the crime and the photographic identification was three days after June 26, 1981. Although the time of the preliminary hearing thereafter is not shown, she saw appellant at that time (and presumably then made an in-court identification). Then, at trial, in March 1982, she again made an in-court identification. The lapse of time between the initial, positive identification and the in-court identification, does not as a matter of law destroy reliability, but that element goes merely to the weight of the testimony. In short, all of the testimony establishes clearly that there was an independent origin for her in-court identification.

■ Lastly, appellant attacks the submissibility of the state's case, arguing that the testimony of Mrs. Spurney created a substantial doubt that he was the intruder in her house. The identification testimony made an issue of appellant's guilt beyond a reasonable doubt, which was for the jury to determine.

The judgment is affirmed.

All concur.