**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Bruce Allen SMITH,
Defendant-Appellant.**

**No. 13557.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 28, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 15, 1984.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Michael Radosevich, Columbia, for defendant-appellant.

GREENE, Judge.

Bruce Allen Smith was jury-convicted of burglary in the first degree and sentenced to eight years' imprisonment by the trial court in accordance with the jury verdict.

On appeal, Smith claims the trial court erred in failing to declare a mistrial when 1) the complaining witness stated that Smith had stolen from her before, and 2) the police officer who arrested Smith stated, on cross-examination, in response to a question concerning whether he knew he had to have probable cause to "get into that house," that "[w]e also had a warrant for his arrest out of Douglas County."

.Evidence introduced during trial that was sufficient to support the jury verdict was as follows. Clara Slavens, who was 89 years old, testified that she lived alone in a house located at 835 West Nichols, Springfield, Missouri. On August 24, 1983, at approximately 1:30 P.M., Mrs. Slavens was sitting on her front porch sewing when Smith, who was 21 years old, came on the property and told Mrs. Slavens he was going in the back yard "to see what was out there." Smith was wearing blue jeans with no shirt. He acted "drunk or doped up." She told him there was nothing in the back yard that concerned him, but he went anyway.

A short time later, she heard her little dog barking inside the house. She went in and found that Smith had entered her home. He was holding a long stick that was used as a window prop and threatened to kill Mrs. Slavens if she did not get her purse for him. Smith then spied her purse, grabbed it, and left the house. Mrs. Slavens then called the police. The purse contained $7 and some food stamps. Mrs. Slavens had known Smith for about a year, as he had done some yard work for her.

Mrs. Slavens was vigorously questioned on cross-examination in an attempt to question her ability to identify Smith as the person who entered her home and stole her purse. On redirect, while the prosecuting attorney was attempting to rehabilitate the witness, the following colloquy occurred:

"Q. (By Miss Appelquist) Has he ever stolen from you before?

A. Yes.

Q. How many times?

MR. McNABB: Can we approach the bench, Your Honor?

THE WITNESS: Yes, he—

THE COURT: Objection sustained—

THE WITNESS: Just once.

MISS APPELQUIST: Just a second, please.

[Counsel approached the bench, and the following proceedings were had outside the hearing of the jury:]

MR. McNABB: Your Honor, I object to the Prosecutor's question on the basis that this is evidence of other crimes and is inadmissible. There's never—the Prosecutor has no convictions to show for this and ask that the jury be admonished to disregard that remark and also ask for a mistrial.

THE COURT: All right—

MISS APPELQUIST: Evidence of other crimes is admissible on the issue of identity, Your Honor, not—I asked the question for that purpose. That is going to be the defense, I understand—

THE COURT: Well, I am going to sustain his objection. I think that goes—that question goes too far. You are doing it on Redirect, and it's after she's identified the defendant. And I just—I will sustain your request.

MR. McNABB: For a mistrial, Your Honor?

THE COURT: Oh, no.

MR. McNABB: Well, I do request a mistrial.

THE COURT: Request will be denied.

[The proceedings returned to open court.]

THE COURT: The jury will disregard the last question and answer."

Witness Paula Cooper, who lives across the street from Mrs. Slavens, and who knew Bruce Smith, saw Smith coming out of Mrs. Slavens' house after the burglary carrying a "purse and a long stick." Smith then ran up the street. When the police

arrived, in response to the call from Mrs. Slavens, Paula gave them a description of Smith and of the purse. Officer Charles Jerman of the Springfield Police Department found Mrs. Slavens' purse in the alley behind her home.

After receiving information from a City Utilities worker in the area that Smith had entered a house at 942 North Douglas, which was a block and a half east of Mrs. Slavens' home, Jerman and other officers went to that location and arrested Smith who was hiding in the attic.

During cross-examination regarding the search of Smith after his arrest, the following exchange occurred:

"Q. What did you find in your pat-down search?

A. Nothing that I can remember. I was searching for weapons at the time.

Q. Well, did you find any money?

A. I didn't search for money at the time. Was just searching for weapons for my own protection.

Q. Did you have him poke his pockets out?

A. Not there.

Q. Okay. Did you, at any time, find any food coupons or dollar bills on his person?

A. I don't remember how much money he had with him. When we put him in the—took him to jail and booked him, he did not have any food coupons with him; I remember that.

Q. Did you look in that house to see if you could find any food coupons, the house where you arrested him?

A. No, and I did not obtain a search warrant to do so.

Q. Well, you knew you would have to have probable cause to get a search warrant, didn't you?

A. Yes.

Q. And you knew that to get into that house, in the first place, you would have to have probable cause to try to get in the house, didn't you?

A. We also had a warrant for his arrest out of Douglas County—

MR. McNABB: May we approach the bench, Your Honor?

THE COURT: Yes.

[Counsel approached the bench, and the following proceedings were had outside the hearing of the jury:]

MR. McNABB: I object to that answer as not being responsive to the question and not in any way indicated by the question. It is prejudicial. It's evidence of other crimes and immaterial and not relevant, and I ask that the jury be instructed to disregard the response and also ask for a mistrial.

THE COURT: Well—

MISS APPELQUIST: Your Honor, he solicited that answer. He was up there trying to cause the—it appeared by his question that this officer was going in that house without any reason to do so. I think the fact the officer had a warrant became relevant by virtue of Mr. McNabb's questioning.

THE COURT: Well, if it's error, it's invited error by your questioning. Now, I certainly wouldn't give a mistrial. I assume that's the reason that he thought he would make the arrest.

MR. McNABB: Well, that wasn't solicited by the Prosecutor, and she says that the reason was that he gave—my previous objection, the reason was that this unknown City Utility man was the probable cause to go into that house. It has never been disclosed that that was the reasoning and—

THE COURT: Is the State asking me to do anything about it or to leave it alone?

MISS APPELQUIST: I think it should be left alone.

THE COURT: I think that's the way the Court will go."

Smith took the stand in his own defense, which was alibi. He claimed he was running errands with his mother and his friend, Rebecca Diane Crosby, at the time of the burglary and that he had gone to Diane's home at 942 North Douglas shortly thereafter. He said he had been drinking whiskey for the greater part of the morn-

ing. When asked what happened when he got to the Crosby home, he replied:

"A. I was drinking at the time. See, I knew I had a warrant out for me for Douglas County. I didn't want to go to jail, you know. She told me 'There's the law out in the yard coming up to the house. You better go hide.' At first, I didn't believe her until I looked. I seen them and went on up in the attic."

Smith admitted a prior conviction in 1982 of felony stealing.

 The declaration of mistrial is a drastic remedy which the trial court may exercise in its discretion to remedy incidents of grievous error. *State v. Chamberlain,* 648 S.W.2d 238, 240–241 (Mo.App. 1983). Our review is limited to determining whether the trial court abused its discretion in denying the motions for mistrial made here.

In the first incident, Mrs. Slavens testified that Smith had stolen from her before. While such testimony may have been inadmissible under the facts here, as it did not have any legitimate tendency to establish Smith's guilt of the crime charged [*State v. Hodge,* 655 S.W.2d 738, 744 (Mo. App.1983)], there is nothing in the record to show that the testimony had such a prejudicial effect that the trial court's prompt sustaining of defense counsel's objection and direction to the jury to disregard the answer did not counteract the answer. The trial court is in a much better position than we are to judge any prejudicial effect of the testimony, and to determine the probability of removing any possible prejudice by action short of declaration of mistrial. *State v. Chamberlain,* supra, 648 S.W.2d at 241. The trial court did not abuse its discretion by denying a mistrial because of Mrs. Slavens' statement that Smith had stolen from her before.

The contention that Officer Jerman's statement that the police had a Douglas County arrest warrant for Smith was prejudicial also lacks merit. We believe the statement was invited by defense counsel's questions on cross-examination.

If you ask a person why he did something, and he tells you, you have no right to complain about the answer. Also, reversible error cannot be predicated on the admission of evidence which the defendant later confirms by his own testimony [*State v. Sanders,* 473 S.W.2d 700, 703–704 (Mo. 1971)]. As this court stated in *State v. Brown,* 654 S.W.2d 290, 291 (Mo.App.1983):

"Fatal to defendant's first point is the fact that defendant, testifying in his own behalf, told the jury the same version of the incident which the challenged statement contained. Accordingly, if there was error in receiving witness Bennett's testimony, the error was harmless beyond a reasonable doubt."

Since neither contention of Smith that a mistrial should have been declared has merit, the judgment and sentence of the trial court are affirmed.

TITUS, P.J., and FLANIGAN, J., concur.