STATE of Missouri, Respondent,

v.

**Leonard Joseph COOPER, Appellant.**

No. 48222.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 9, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 17, 1985.

Application to Transfer Denied
June 25, 1985.

354

355

Lew Anthony Kollias, Michael Radosevich, Columbia, for appellant.

John Ashcroft, Atty. Gen., T. Chad Farris, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Defendant, Leonard Joseph Cooper, appeals from his conviction by a jury of robbery in the first degree, § 569.020 RSMo 1978, and armed criminal action, § 571.015 RSMo 1978. Defendant was sentenced as a dangerous and persistent offender to life imprisonment on the robbery conviction and to seventy-five years imprisonment on the armed criminal action conviction, the sentences to run consecutively.

The sufficiency of the evidence is not challenged so a summary of the pertinent facts suffices. On March 27, 1983, at about 1:00 a.m., a bar in O'Fallon, Missouri was robbed. Karen Krupinski, who was working as a barmaid, testified the defendant entered the bar and she recognized him as an old friend of her brother's. She had seen him on numerous occasions. After about ten minutes, defendant left the bar. Soon thereafter, at about closing time, defendant again entered the bar accompanied by an accomplice. Both were armed with shotguns and wore ski masks. Ms. Krupinski again recognized the defendant by his blue, "bulgy" eyes and voice. The defendant ordered everyone to "get against the wall." The defendant used the shotgun to shoot the bar's public telephone and ripped two other telephones off the wall. The defendant ordered Ms. Krupinski to empty the cash register of the money, which she did. Defendant took a metal box containing rolls of quarters. The lighting in the bar was sufficient to make the identification. When the police arrived Ms. Krupinski told them that the defendant was the robber.

Later that morning the defendant and his accomplice, Jerry Teal, were arrested at defendant's residence. He was read his Miranda rights and he said he had nothing to hide and directed the police officers to two shotguns in the back bedroom closet. Later the police found a ski mask and a nylon mask, shotgun shells, currency, and a metal box containing $460 in rolls of quarters. The box was identified as the one taken in the robbery. A gun residue test was later performed on the defendant resulting in an expert's opinion that the defendant had recently discharged a firearm. During the trial Police Lieutenant Thomas Anderson testified to a conversation he had with a Wentzville police officer in which the two discussed a peace disturbance summons issued to the defendant. Defendant did not testify.

A motion to suppress the identification testimony of Ms. Krupinski was denied.

Defendant's first point on appeal is that the trial court erred in denying his motion to suppress Ms. Krupinski's in-court identification of defendant because it was the result of impermissible suggestion and was not supported by a sufficient independent basis. Defendant argues that the only pretrial identification of him by Ms. Krupinski at the preliminary hearing was suggestive in that he was brought into the courtroom in handcuffs accompanied by other jail inmates.

An eyewitness identification at trial following a pretrial identification will violate a defendant's right to due process only if the pretrial identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. U.S.*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Heffner*, 641 S.W.2d 803, 805 (Mo.App.1982). "Reliability, not suggestiveness, 'is the linchpin in determining the admissibility of identification testimony.'" *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979) *quoting from Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Such reliability must be assessed under the totality of the circumstances; the factors include: (1) the opportunity of the witness to

view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior identification; (4) the level of certainty demonstrated by the witness at the confrontation and (5) the length of time between the crime and the confrontation. *State v. Higgins, supra,* at 160. Where a positive courtroom identification is made upon a factual basis independent from a suggestive pretrial identification procedure, the identification testimony is admissible. *State v. Phillips,* 596 S.W.2d 752, 755 (Mo.App.1980). Since the witness knew the defendant prior to the offense the in-court identification had an independent basis. *State v. Collins,* 567 S.W.2d 144, 146 (Mo.App.1978); *State v. Corlew,* 463 S.W.2d 836, 838 (Mo.1971). The trial court, in a hearing on a motion to suppress, found Ms. Krupinski had an opportunity to observe the suspect during the robbery for ten to fifteen minutes, from a distance of three to five feet, that the witness had known the suspect previously, and had seen him in the bar five to ten minutes prior to the robbery. These facts make it clear Ms. Krupinski's identification had an independent basis due to her witnessing the robbery at close range and the fact she knew the robber. The immediate identification of Cooper after the robbery, and the certainty with which Ms. Krupinski confirmed the identification at trial demonstrates the reliability of the identification.

■ Defendant then argues that Ms. Krupinski must be exposed to a police lineup of possible suspects to establish an independent basis of identification. We disagree. The witness knew the defendant for a number of years and had already informed the police that the defendant was the robber. The state is not obligated to hold a lineup. *State v. Haselhorst,* 476 S.W.2d 543, 546 (Mo.1972); *State v. Dickerson,* 568 S.W.2d 559, 561 (Mo.App.1978). Defendant also argues that Ms. Krupinski's consumption of alcohol before the robbery, the dim lighting conditions in the bar, and specificity of description of defendant's clothing affected her reliability. These factors affect only the credibility of the witness and not the admissibility. *State v.*

*Bivens,* 558 S.W.2d 296, 299 (Mo.App.1977). Defendant's motion to suppress the courtroom identification was properly denied.

Defendant next contends the court erred in overruling his objection to expert testimony gained from a gunshot residue test by the use of an electrochemical analysis because the test is not accepted as accurate in the scientific community. Defendant argues that the only evidence offered to prove the electrochemical analysis was generally accepted in the scientific community, as required for admission of any scientific evidence, was the expert's testimony himself. Defendant argues the expert testimony of Longwell was insufficient to establish the scientific validity and general acceptance of the analysis.

■ C.R. Longwell, the state's expert, holds a Bachelor of Science degree in chemistry from the University of Missouri and a Master of Science in analytical biochemistry from the University of Nevada and thirty hours of study in his field at Purdue University. He has been a criminalist with the Southeast Missouri Regional Crime Laboratory since 1973, had performed 200 such electrochemical analysis at the lab in the four years prior to the trial. It appears from this testimony that by reason of education or specialized experience he possesses superior knowledge in this technical matter. *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 616 (Mo. 1965). Longwell has been established an expert under this standard. *Shelby, supra.* Further, whether expert opinion should be permitted on a particular subject and whether a particular witness qualifies as an expert are matters ordinarily determined by the trial court in its sound discretion. *State v. Means,* 628 S.W.2d 426, 429 (Mo.App.1982).

■ The record demonstrates that the electrochemical test was accepted as accurate by the scientific community. The expert testified that the accuracy of the electrochemical test is within the limits of scientific certainty and the test is generally accepted in the scientific community. De-

fendant argues that the only testimony establishing the test's acceptances in the scientific community was that of Longwell. This argument goes to the weight of the testimony rather than to its admissibility. *State v. Duncan,* 540 S.W.2d 130 (Mo.App. 1976). Point denied.

Finally, defendant contends that the trial court's refusal to grant a mistrial when a police officer testified to a summons having been issued to the defendant for peace disturbance was reversible error. The trial admonished the jury to disregard the statement, and ordered it stricken from the record. Defendant's motion for a mistrial was denied.

 Declaring a mistrial is a most drastic remedy that is to be used only in cases of grievous error. *State v. Parker,* 476 S.W.2d 513, 514 (Mo.1972). Such a declaration is within the discretion of the trial court and will not be disturbed on appeal unless it is found the trial court abused its discretion. *State v. Helm,* 624 S.W.2d 513, 516 (Mo.App.1981). A trial judge is in a better position to judge any prejudicial effect of the incident complained of may have produced. *State v. Chamberlain,* 648 S.W.2d 238, 241 (Mo.App.1983).

In this matter, the trial judge used his discretion when he retired to chambers with attorneys to discuss the incident. His decision to direct the jury to ignore the remark, and telling jury members the response would be stricken from the record, showed the trial judge had used his discretion and determined a mistrial was not needed. There is a presumption the jury followed the court's instructions. *State v. Chamberlain, supra,* 241; *State v. Hunter,* 586 S.W.2d 345, 348 (Mo. banc 1979). Moreover, every incident in a trial does not require a granting of a mistrial. *State v. O'Neal,* 618 S.W.2d 31, 35 (Mo.1981).

There is nothing in the record to suggest the single remark about Cooper, stating he had been issued a summons for peace disturbance had a prejudicial effect on the jury. This is especially true, given the relatively minor seriousness of disturb-

ing the peace, when compared with the charges faced at trial.

Judgment affirmed.

CRIST and CRANDALL, JJ., concur.