STATE of Missouri, Respondent,

v.

James H. COOPER, Appellant.

No. 49959.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 18, 1986.

Motion for Rehearing and/or Transfer Denied April 15, 1986.

Application to Transfer Denied
June 17, 1986.

S. Lee Patton, St. Louis, for appellant.

William L. Webster, Atty. Gen., Duane E. Butler, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant, James Cooper, appeals from his conviction on one count of first degree robbery, section 569.020 RSMo 1978, and one count of armed criminal action, section 571.015 RSMo 1978. As a prior offender, defendant received consecutive prison sentences of fifteen years for the robbery offense and three years for armed criminal action.

On appeal, defendant contends that the trial court erred in: (1) excluding expert testimony on the reliability of eyewitness identifications; (2) denying defendant's motion for a mistrial when one of the state's eyewitnesses testified that she suffered a miscarriage three days after the robbery; and (3) admitting into evidence a police lineup photograph that was unnecessarily and impermissibly suggestive, thereby tainting the in-court identifications by the state's witnesses. Finding each of these contentions without merit, we affirm.

The evidence established that on April 24, 1981, a man entered a Super America store in Florissant, Missouri, drew a pistol and demanded that two store employees empty the money from the cash register into a blue canvas bag. After the employees put over $300 into the bag, the man took the bag and left the store. Three of the store's customers followed the robber out of the store. Two of the customers saw the robber run around a corner of the store, then heard him climbing a chain link fence behind the store. They then observed a car leaving from a road directly behind the fence. The police were notified immediately and given a description of the car and a license plate number.

A few minutes later, officers from the Hazelwood Police Department stopped a car matching the description given by the store customers. The officers initially observed only two individuals in the car, but upon further investigation they discovered the defendant, James Cooper, slouched down in the front seat. From the trunk of the car the officers seized a semi-automatic pistol and a blue canvas bag, later identified as the pistol and bag used in the robbery.

Two of the customers who had followed the robber out of the store were taken immediately to the place where the car had been stopped. Each of them thereupon identified defendant as the robber. At a police lineup the following morning, the other customer and the two store employees likewise identified defendant as the robber.

At trial, only one of the store employees and one of the customers were able to positively identify defendant as the robber based upon their independent recollection of the robbery. The other three identifications were verified by means of a lineup photograph and the testimony of police officers who witnessed the identifications. Defendant testified on his own behalf that the robbery was actually committed by Irvin Moore, who was one of the persons in the car with defendant at the time of the arrest. After hearing all the evidence, the jury convicted defendant of first degree robbery and armed criminal action. After sentencing, defendant filed a motion for a new trial, which the trial court overruled. Defendant then appealed to this court.

In his first point on appeal, defendant argues that the trial court erred in excluding the expert testimony of Dr. Thomas

Joseph Fitzgerald, a clinical psychologist specializing in eyewitness identifications. The state filed a motion in limine to exclude such testimony, arguing that it constituted a comment on the weight and credibility of the state's witnesses, thereby invading the province of the jury. The trial court granted this motion, whereupon defendant made an offer of proof by conducting a voir dire examination of Dr. Fitzgerald outside the hearing of the jury.

According to the offer of proof, Dr. Fitzgerald would have testified about psychological research on eyewitness identifications and common misconceptions regarding the reliability of such identifications. Dr. Fitzgerald would not have commented directly upon the reliability of any specific witness's testimony, but would have discussed the psychological factors that affect the accuracy of a typical eyewitness identification. These factors include the problems involved in cross-racial identifications; the effect of stress on the ability to perceive and remember; the length of time information is ordinarily retained (the "forgetting curve"); the unconscious transfer of other feelings or events to the observed event; the lack of correlation between an eyewitness's positiveness and the accuracy of his identification; and memory techniques used to enhance recollection.

Defendant argues that this evidence would have given the jurors a better understanding of the psychological process of eyewitness identification, and would thus have assisted them in assessing the eyewitness testimony presented by the state. This expert testimony was particularly relevant, according to defendant, because the state's case against him was based exclusively upon eyewitness testimony.

■■■ Determinations as to the relevancy and admissibility of expert testimony are within the sound discretion of the trial court, and will not be overturned unless that discretion has been abused. *State v. Hensley*, 655 S.W.2d 810, 811 (Mo.App. 1983). Expert testimony is admissible if it is clear that the subject of such testimony is one upon which the jurors, for want of

experience or knowledge, would be otherwise incapable of drawing a proper conclusion from the facts in evidence. *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984). Admission of scientific evidence further depends upon its having been widely accepted as reliable among the relevant scientific community. *Id.* It follows that such evidence should be excluded if it does not assist the jury, or if it unnecessarily diverts the jury's attention from the relevant issues. *Id.* Expert testimony is also inadmissible if it relates to the credibility of witnesses, for this constitutes an invasion of the province of the jury. *Id.*

In *State v. Bullington*, 680 S.W.2d 238 (Mo.App.1984), defendant argued that the trial court erred in excluding expert testimony on the reliability of eyewitness identifications. Defendant claimed that the expert would have testified only about the effects of stress on eyewitness identifications and about common misconceptions among laypersons concerning human perception and memory. The court found, however, that according to defendant's offer of proof, which consisted of only "a brief narrative statement by defense counsel," the expert would have applied his research to the specific facts at issue and to the identifications made by two of the state's witnesses. Noting that this was a case of first impression in Missouri, the court summarized the prevailing law in other jurisdictions:

The majority of courts which have considered the question have ruled the expert testimony to be of no proper assistance because it tends to invade the function the jury is impaneled to perform. Where the expert witness defines limits of perception in laboratory conditions and relates those to the conditions which prevailed in the case at bar, the result is a comment on the weight and credibility of the testimony the opponent's witnesses have given. *United States v. Thevis*, 665 F.2d 616 (5th Cir.1982); *United States v. Fosher*, 590 F.2d 381 (1st Cir. 1979); *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973). The cited cases

have held that probing cross-examination is an adequate tool for presenting to the jury the facts necessary for the jury to evaluate the reliability of the identification evidence.

*Id.* at 244. The court thus held that the trial court did not abuse its discretion in excluding the proffered expert testimony.

In the instant case, defendant has made an extensive offer of proof, including the actual testimony of his proffered expert witness. The expert's testimony has been carefully tailored to avoid any comment upon the specific facts in issue or the credibility of any particular witness's testimony. The expert's testimony pertains exclusively to the psychological factors that affect the reliability of a typical eyewitness identification. Defendant thus appears to avoid the *Bullington* court's proscription against expert testimony that comments directly upon the credibility of particular witnesses.

The *Bullington* court properly observed that a majority of courts have excluded expert testimony on the reliability of eyewitness identifications. Our research indicates, however, that a modern trend favors the admissibility of such evidence. *See State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983); *United States v. Downing,* 753 F.2d 1224 (3rd Cir.1985); *United States v. Smith,* 736 F.2d 1103 (6th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984); *People v. McDonald,* 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984); *People v. Brooks,* 128 Misc.2d 608, 490 N.Y.S.2d 692 (Co.Ct.1985). The testimony ruled admissible in those cases—like that offered by defendant in the instant case—was generally confined to an analysis of the psychological factors affecting eyewitness identifications, and avoided commenting upon the credibility of any particular witness. Given this split of authority, it remains an open question whether such testimony is admissible under Missouri law.

■ On this appeal, however, we need not rule upon the admissibility of the proffered testimony because, under the particular facts presented, any error committed by the trial court was necessarily harmless. The instant case is similar to *Smith, supra,* wherein the court held that the exclusion of expert testimony on the reliability of eyewitness identifications constituted harmless error because the evidence overwhelmingly established defendant's guilt. Defendant had been identified as the bank robber by three eyewitnesses, and his palmprint had been found at the bank. The court thus concluded that "[t]he expert testimony would have done little to discredit the testimony of three eyewitnesses, each of whom independently identified [defendant] at a line-up." *Smith,* 736 F.2d at 1107.

In the instant case, the state presented *five* eyewitnesses, each of whom identified defendant as the robber. Moreover, defendant was discovered a few minutes after the robbery hiding in the getaway vehicle, which contained the gun and the canvas bag used in the robbery. The testimony of Dr. Fitzgerald would have been of little help to defendant in overcoming the overwhelming weight of this evidence. Accordingly, defendant was not prejudiced by the trial court's exclusion of such testimony.

■ We further observe that even if such evidence is admissible under Missouri law, the decision whether to admit the evidence in a particular case remains within the sound discretion of the trial court. The Arizona Supreme Court, whose decision in *Chapple* initiated the modern trend favoring the admissibility of such evidence, has in recent cases emphasized that the question of admissibility remains discretionary with the trial court. *See State v. Via,* 146 Ariz. 108, 704 P.2d 238, 253 (1985); *State v. Poland,* 144 Ariz. 388, 698 P.2d 183, *cert. granted,* —— U.S. ——, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985). In the instant case, we find no abuse of discretion. We therefore reject defendant's claim of error on this point.

In his second point on appeal, defendant argues that the trial court erred in refusing to declare a mistrial when the prosecutor elicited irrelevant and inflammatory infor-

mation during direct examination of an eyewitness to the robbery. Specifically, the prosecutor asked the witness if she "had any aftereffects from [the] robbery." The witness responded that she "had a miscarriage three days after." Defendant immediately moved for a mistrial, arguing that such testimony was so prejudicial that a fair trial was no longer possible. The trial judge conceded that the testimony was "pretty devastating," but denied defendant's motion for a mistrial. Before proceeding with the trial, however, the judge did issue the following instruction to the jury:

> Jurors, the Court directs you that that last question to the witness ... concerning her miscarriage was completely improper on the part of the State and it is a matter that has no business in this case. It is completely irrelevant and highly prejudicial, so I am strongly considering that you completely disregard that question and that answer.

Declaring a mistrial is a drastic remedy that should only be used in the most extraordinary circumstances. *State v. Gilmore,* 681 S.W.2d 934, 943 (Mo. banc 1984). An error does not justify granting a mistrial unless it is so prejudicial that no other curative measure could remove the error. *State v. Smith,* 675 S.W.2d 690, 694 (Mo.App.1984). The decision whether to declare a mistrial remains largely within the discretion of the trial judge, who can best determine the prejudicial effect of the error and the possibility of removing the prejudice by any action short of a mistrial. *State v. Smith,* 679 S.W.2d 424, 427 (Mo. App.1984). An appellate court will not interfere with the exercise of that discretion absent a manifest abuse of discretion and a real possibility of prejudice to the defendant. *State v. Brewer,* 672 S.W.2d 384, 386 (Mo.App.1984).

The testimony concerning the witness's miscarriage was irrelevant and could potentially have prejudiced the jury against the defendant. Such conduct by the state evinces a lack of prosecutorial restraint. Lest we forget, a prosecuting attorney in a criminal case acts as a quasi-judicial officer representing the people of the state. The prosecutor's duty is not to obtain a conviction at any cost, but to see that justice is done and that the accused receives a fair and impartial trial. *State v. Jackson,* 664 S.W.2d 583, 584 (Mo.App.1984); *State v. Selle,* 367 S.W.2d 522, 530 (Mo.1963).

The question nevertheless remains whether the disputed testimony was so prejudicial that the trial court abused its discretion in refusing to grant a mistrial. The evidence of defendant's guilt, including five eyewitness identifications, was certainly overwhelming. Also, after the witness testified about her miscarriage, the trial judge issued a particularly strong cautionary instruction to the jury. The jury is presumed to have followed the court's instruction. *State v. Chamberlain,* 648 S.W.2d 238, 241 (Mo.App.1983). The trial judge apparently believed that this instruction was sufficient to remove any prejudice caused by the testimony. Given the trial judge's unique ability to assess the testimony's impact upon the jury, we hesitate to interfere with his exercise of discretion. Accordingly, we find no error on this record.

For his third point on appeal, defendant argues that the trial court erred in denying defendant's motion to suppress a police photograph of the lineup at which three of the state's witnesses identified defendant as the robber. Defendant argues that the lineup was unnecessarily and impermissibly suggestive, thereby tainting the in-court identifications by the three witnesses who viewed the lineup. Defendant alleges that he was noticeably older than each of the other four persons in the lineup, that he was placed directly in the center of the lineup, that he was much stockier than the other persons in the lineup, and that his hair protruded straight out from his head, unlike the others in the lineup.

Preliminarily, we observe that defendant has failed to properly preserve this point for review. Although defendant moved to suppress the photograph and ob-

jected to its admission into evidence, defendant did not make the requisite objection to the identification testimony at trial. *State v. Hurst*, 612 S.W.2d 846, 851 (Mo. App.1981). We nevertheless review the alleged error under the plain error rule, Rule 29.12(b). *State v. Enna*, 664 S.W.2d 32, 34–35 (Mo.App.1984).

■ To suppress an in-court identification, defendant must establish: (1) that the pre-trial identification procedures employed by the police were impermissibly suggestive and (2) that the suggestiveness was sufficient to create a very substantial likelihood of an irreparable misidentification at trial. *State v. Price*, 689 S.W.2d 380, 382 (Mo.App.1985). Each of these questions must be answered in light of the totality of circumstances. *State v. Higgins*, 592 S.W.2d 151, 159 (Mo. banc), *appeal dismissed*, 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980).

■ A lineup is not impermissibly suggestive merely because the individuals composing the lineup have dissimilar physical appearances. *State v. Burns*, 671 S.W.2d 306, 310 (Mo.App.1984). A reasonable effort to find physically similar participants is normally all that is required. *State v. Bockes*, 676 S.W.2d 272, 277 (Mo.App.1984). Differences in age, weight, height, hairstyle and other physical characteristics do not, therefore, compel a finding of impermissible suggestiveness. *See State v. Willis*, 577 S.W.2d 655, 657 (Mo.App.1979).

We have examined the challenged photograph and have not found it to be impermissibly suggestive. Contrary to defendant's suggestion, defendant does not appear to be stockier than the other participants, nor is he noticeably older than the others. Although defendant stands in the center of the lineup, this is not particularly suggestive. Finally, defendant's distinctive hairstyle is not sufficient to compel a finding of impermissible suggestiveness. Identical appearance among the participants is not required. *State v. Little*, 674 S.W.2d 541, 545 (Mo. banc), *cert. denied,* — U.S. ——, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985).

■ We also observe that the in-court identifications by two of the three witnesses who viewed the lineup were based upon their independent recollection of the robbery, not upon the lineup photograph. Given this independent basis for the in-court identifications, any possible prejudice to defendant was necessarily *de minimis. State v. Cooper*, 691 S.W.2d 353, 356 (Mo. App.1985). Accordingly, we reject defendant's claim of error on this point.

The judgment is affirmed.

KAROHL, P.J., and SIMON, J., concur.