■ JUAN RODRIGUEZ, an Infant, by His Mother and Natural Guardian, MARIA MALDONADO et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant. — In an action to recover damages for personal injuries, etc., defendant appeals from a judgment of the Supreme Court, Kings County (Bernstein, J.), entered May 25, 1983, which awarded plaintiff Juan Rodriguez the principal sum of $400,000 and awarded plaintiff Maria Maldonado the principal sum of $29,276.32, upon a jury verdict.

Judgment affirmed, with costs.

On September 16, 1977, Juan Rodriguez, then 12 years old, was enrolled in one of two special classes for trainable mentally retarded children[1] at P.S. 261 in Brooklyn. Juan's teacher, Beverly Kolstein, took the class of approximately 16 children outside to the kindergarten playground at about 11:00 A.M. for what she referred to as a supervised play period. Th primary purpose of this period was to "normalize" each child's experience as much as possible and allow him or her to independently select games or playground equipment. The teacher's function was to encourage the children to exercise. While Kolstein was talking to a small group of children, she first observed Juan and another pupil running and chasing each other. Juan was approximately two or three feet away from her at that time. The two boys continued to run and then disappeared from Kolstein's view for about 10 to 15 seconds. Thereafter, Kolstein turned around and saw Juan lying face down at the foot of a set of steps leading back to the kindergarten classrooms. Juan did not speak. No one saw what had happened. As a result of the fall, Juan suffered extensive head injuries.

Plaintiffs commenced the instant action. At a bifurcated trial, Kolstein was called as a witness for plaintiffs on the question of liability. She testified that Juan had been a pupil in her classes for two years at the time of the accident. Kolstein further testified that she was aware of Juan's perceptual motor difficulties and poor eye-hand coordination. She described his manner of running as a clumsy, "lumbering"gait. In addition, Kolstein testified that Juan and the other boy with whom he had been running on September 16, 1977, often played a chasing game called "monster" during supervised play periods in the past,

---

1. Trainable mentally retarded children were classified as persons with an intelligence quotient of less than 50 who functioned at or less than the level of a five-year-old child.

although, prior to said date, there had never been any injury suffered as a result of this activity. Kolstein testified that on the date of the accident, she did nothing to prevent the boys from running, nor did she try to ascertain their whereabouts as they disappeared briefly behind a storage building in the playground.

Plaintiffs called an expert witness who was trained in the field of special education and familiar with the teaching policies of various school districts partially due to her experience as an employee of defendant for 36 years. The expert witness testified, in essence, that purposeless, freestyle running during school hours was dangerous and never permitted for any child, but was especially hazardous where mentally retarded children were concerned. She further testified that the proper procedure for a teacher to follow under the circumstances at bar would have been to stop the children, either by word or physical act.[2]

In our view, plaintiffs established a prima facie case of defendant's negligence in failing to supervise plaintiff Juan Rodriguez in the school playground. It is well settled that a school has the duty to exercise the same degree of care toward its students as would a reasonably prudent parent under comparable circumstances (*Lawes v Board of Educ.*, 16 NY2d 302, 305; *Ehlinger v Board of Educ.*, 96 AD2d 708). The evidence established that defendant breached its duty when Beverly Kolstein failed to stop Juan from running, since she was well aware of his physical and mental limitations and had the opportunity either to shout at him or to physically stop him as he ran past her. Moreover, plaintiffs' expert testified that such running was prohibited during school hours, regardless of the circumstances. Furthermore, it was reasonably foreseeable that Juan might injure himself while running, even though he had not done so in the past. Thus, considering the proof in the instant case, it was proper to allow the jury to determine the issue of liability.

Defendant also claims that several errors were made at trial which warrant reversal. We disagree. Whether expert testimony will be admissible on a certain issue is a matter left to the discretion of the trial court (*People v Cronin*, 60 NY2d 430, 433). Under the circumstances at bar, it was not an abuse of discretion to allow such testimony to assist the jury in reaching a verdict. Nor is there merit to defendant's contention that the trial court's charge with respect to the evaluation of expert testimony was improper. Even though the court, while marshaling the evidence, used the word "negligent" in summing up the testimony of plaintiffs' expert, there could not have been any prejudice to

---

2. Kolstein testified that there was no set school policy with respect to the type of running activities permitted during school hours.

defendant since the court correctly defined the elements of negligence, twice informed the jury that it could accept or reject the opinion of experts and further instructed that the court's recollection of the evidence was not controlling.

The only uncorrected error was in allowing plaintiffs, as part of their case-in-chief, to read into the record a statement made by Beverly Kolstein during her examination before trial. The deposition of a party's employee may be used for any purpose at trial by any adversely interested party so long as the party employer *produced* the employee (CPLR 3117, subd [a], par 2). However, if any party *other than* the employer has called the employee as a witness, neither that party nor any other may use the employee's deposition under that provision (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3117:4, p 493). In the instant case, although it was improper to allow plaintiffs to use Kolstein's deposition for any purpose other than to impeach her credibility, since plaintiffs themselves called her as their own witness, the statement was brief and, in any event, merely repetitious of what had been testified to earlier in the case. Therefore, that error does not warrant reversal. Mollen, P. J., Lazer, Gibbons and Brown, JJ., concur.