OPINION OF THE COURT
Kenneth H. Lange, J.
The defendant has requested a ruling in limine as to whether expert testimony concerning the factors which affect the reliability of an eyewitness identification will be admitted into evidence at this trial. The People have cross-moved to preclude such testimony. Resolution of this issue lies within the discretion of this court (see, Rodriguez v Board of Educ., 104 AD2d 978).
The defendant is accused of the crimes of rape in the first degree and sexual abuse in the first degree. He was acquitted in the first trial of this matter of the crimes of robbery in the first degree, petit larceny, and criminal use of a firearm in the first degree. The jury was unable to reach a verdict with respect to the rape and sexual abuse counts and the case is before this court for retrial. The prosecution case rests primarily upon the *609 testimony of the complainant, Julie Bondi, including her identification of the defendant as her attacker. It is anticipated that there will be some extrinsic evidence of defendant’s culpability, none of which will conclusively establish the defendant’s commission of the crime. It is also anticipated that the defendant will interpose an alibi defense.
An application identical to that which is presently before the court was made in the first trial, before the Honorable Joseph K. West of this court. Judge West, in the exercise of his discretion, declined to admit the proffered testimony. Because of the discretionary nature of the ruling, and the fact that it is essentially an evidentiary matter, this court is not precluded from taking a fresh look at the request (see, People v De lorio, 45 Misc 2d 68).
The defense offer of proof indicates that Dr. Robert Buckhout, a psychologist specializing in the field of memory and perception, will testify, if permitted, to the factors which studies have shown are relevant to the reliability of an eyewitness identification. These factors include:
(1) the delay between the event and the identification;
(2) stress;
(3) the violence of the situation;
(4) assimilation of postevent information;
(5) the cross-racial aspect of the identification;
(6) the selectivity of perception;
(7) the “filling in” phenomenon;
(8) expectancy;
(9) the effect of repeated viewings;
(10) the lack of a correlation between confidence and reliability;
(11) the motivation of the victim to make a correct identification;
(12) the motivation of the police to make an arrest;
(13) the introduction of suggestiveness through photo arrays;
(14) the availability of a “zero option;” and
(15) the effect of what a witness is told after the identification is made.
He is also prepared to testify that laymen place an undue emphasis on identification testimony in general and that cross-examination is not effective to discredit a mistaken identification because the witness truly believes that his testimony is accurate, even if it is not. According to the defense memorandum of law, Dr. Buckhout will specifically not venture any *610 opinion as to the validity of eyewitness identification testimony in general or as to the reliability of the identification testimony in the case at bar.
Several New York trial courts and the Appellate Division, First Department, have held the testimony of this particular witness to be inadmissible on the ground that expert testimony with respect to such matters is improper (see, People v Valentine, 53 AD2d 832; People v Brown, 124 Misc 2d 938; People v Brown, 117 Misc 2d 587). The Court of Appeals most recent explanation of the role of expert testimony (People v Cronin, 60 NY2d 430), however, has cast doubt on the authority of that First Department decision, and in several other jurisdictions the trend in favor of excluding such testimony has recently been reversed. This court is of the opinion that admission of the proffered testimony, when limited to an explication of the factors which studies have shown are relevant to making a reliable identification, is proper expert testimony and will enhance the ability of the jury to reach its decision in this case.
Courts have traditionally been reluctant to permit expert testimony as to the reliability of identification testimony. The leading case is United States v Amaral (488 F2d 1148), in which the United States Court of Appeals for the Ninth Circuit upheld, as a valid exercise of discretion, the trial court’s exclusion of such testimony. The trial court had reasoned that to allow expert opinion as to the weight or effect to be given to the testimony of an eyewitness would usurp the function of the jury. The Circuit Court, after outlining the elements necessary to any offer of expert testimony, agreed, holding that the reliability of an eyewitness identification was not a proper subject for expert testimony. The court reasoned that in our adversary system, cross-examination is the primary means of testing for truthfulness.
Similarly, in United States v Fosher (590 F2d 381), the United States Court of Appeals for the First Circuit held that the trial court had not erred in excluding such testimony. The Circuit Court reasoned that the defendant’s offer of proof had not made clear the relationship of the expert testimony to the testimony of the eyewitnesses or that the expert’s analysis was based upon generally accepted scientific standards. Further, the court held that “the proffered expert testimony would create a substantial danger of undue prejudice and confusion because of its aura of special reliability and trustworthiness” (590 F2d, at p 383). Most importantly, the court relied upon Amaral in holding that eyewitness identification was not a proper subject for expert *611 testimony, stating: “[T]o be a proper subject of expert testimony, proof offered to add to [the juror’s] knowledge must present them with a system of analysis that the court, in its discretion, can find reasonably likely to add to common understanding of the particular issue before the jury. We are satisfied that the trial court was within its discretion when it found the offer in this case neither sufficiently focussed on the issue nor sufficiently beyond the ken of lay jurors to satisfy Rule 702.” (590 F2d, at p 383.) Numerous other courts have reached the same result on similar or identical reasoning (see, e.g., State v Reynolds, 230 Kan 532, 639 P2d 461; People v Johnson, 97 Ill App 3d 1055, 423 NE2d 1206, cert denied 455 US 951; Sobel, Eye-Witness Identification: Legal and Practical Problems § 9.6 [b] [2d ed 1984], and cases cited therein).
Recently, however, courts have begun to question this traditional analysis. In State v Chapple (135 Ariz 281,660 P2d 1208), the Supreme Court of Arizona held that at least in the circumstances presented, the trial court had erred in refusing to allow expert testimony with respect to the identification issue. In Chappie, the defense offer of proof was virtually identical to that at bar. The witness in that case was to testify to certain “variables” with respect to eyewitness identification, such as time lapse, stress, unconscious transfer phenomenon, assimilation of postevent information, and the relationship of confidence to accuracy, all of which scientific studies have shown to be relevant to the reliability of identification testimony. Finding that the existence of these factors and their effect on the reliability of identification testimony are not within the knowledge of the average juror, the court concluded that expert testimony on the subject was admissible to enlighten the jury. The court noted, however, that its holding was based upon the particular relevance of the factors to the facts before it, and refused to indorse a rule permitting such testimony in every case.
The Supreme Court of California reached the same result in People v McDonald (37 Cal 3d 351, 208 Cal Rptr 236, 690 P2d 709), overruling in the process a decade-old intermediate appellate decision which had precluded such testimony (see, People v Johnson, 38 Cal App 3d 1,112 Cal Rptr 834). Under California law, expert testimony is admissible when “[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact” (Cal Evidence Code § 801 [a]). Based upon this standard, the court held that expert testimony such as that offered in the case at bar should have been admitted. The court stated:
*612 “It is doubtless true that from personal experience and intuition all jurors know that an eyewitness identification can be mistaken, and also know the more obvious factors that can affect its accuracy, such as lighting, distance, and duration. It appears from the professional literature, however, that other factors bearing on eyewitness identification may be known only to some jurors, or may be imperfectly understood by many, or may be contrary to the intuitive beliefs of most * * *
“We conclude that although jurors may not be totally unaware of the foregoing psychological factors bearing on eyewitness identification, the body of information now available on these matters is ‘sufficiently beyond common experience’ that in appropriate cases expert opinion thereon could at least ‘assist the trier of fact’ (Evid. Code, § 801, subd (a)).” (37 Cal 3d, at pp_-_, 690 P2d, at pp 720-721.)
The court rejected the argument that such testimony usurps the function of the jury, which had been accepted in Johnson, reasoning that as long as the testimony is limited to an explanation of the relevant factors “[t]he jurors retain both the power and the duty to judge the credibility and weight of all testimony in the case” (37 Cal 3d, at p_, 690 P2d, at p 722). The court held that expert testimony on eyewitness identification is admissible whenever “eyewitness identification of the defendant is a key element of the prosecution’s case but is not substantially corroborated by evidence giving it independent reliability” (37 Cal 3d, at p_, 690 P2d, at p 727).
The United States Court of Appeals for the Sixth Circuit recently addressed the issue in United States v Smith (736 F2d 1103, cert denied_ US _, 105 S Ct 213), concluding that although expert testimony with respect to eyewitness identification is admissible, the trial court’s refusal to permit it did not constitute reversible error. The court considered the elements necessary to an offer of expert testimony, on the basis of which the court in United States v Amaral (488 F2d 1148, supra) had rejected such testimony, but reached the opposite conclusion. The Sixth Circuit held that such testimony would have “assisted the fact finder [to] understand the facts of this case” (736 F2d, at p 1106) and was therefore a proper subject of expert testimony. The court further noted that where the testimony was offered by the defendant, its admission could not prejudice him and, therefore, his right to a fair trial, which it had previously considered to be “ ‘a strong countervailing restraint on the admission of expert testimony’ ” was not implicated (736 F2d, at p 1107).
*613 Most recently, in January of this year, the United States Court of Appeals for the Third Circuit joined the Sixth Circuit and the Supreme Courts of Arizona and California in indorsing the admissibility of eyewitness identification expert testimony. In United States v Downing (753 F2d 1224), the Third Circuit held that the so-called “ultimate issue rule,” which precluded a witness from giving an opinion as to the ultimate issue of fact before the jury, thereby usurping its function, had been abolished by the Federal Rules of Evidence in favor of the “helpfulness” test (Fed Rules Evidence, rule 704 [in 28 USC, Appendix]). Finding that the proffered expert testimony could “assist the jury in reaching a correct decision” (753 F2d, at p 1231), the court held that under certain circumstances such testimony would be admissible. Whether such testimony would be admitted in any particular case would be within the discretion of the trial court which, the court stated, should “conduct a preliminary inquiry focusing on (1) the soundness and reliability of the process or technique used in generating the evidence, (2) the possibility that admitting the evidence would overwhelm, confuse, or mislead the jury, and (3) the proffered connection between the scientific research or test result to be presented, and particular disputed factual issues in the case.” (753 F2d, at p 1237.) Since the trial court in Downing had failed to consider these matters, refusing the offer of such testimony outright, the conviction was reversed.
The New York courts which have considered the issue have been less favorably disposed to the admission of expert testimony on the subject of eyewitness identification than have these other jurisdictions. In People v Brown (117 Misc 2d 587, supra), the Honorable Nicholas Colabella of this court considered Dr. Buckhout’s testimony for purposes of the Wade hearing, finding it to be “interesting and in some respects helpful” (117 Misc 2d, at p 592), but refused to permit it at the trial. Judge Colabella reasoned that although Dr. Buckhout appeared to be qualified as an expert and the subject of his testimony “may not be within the common knowledge of a jury * * * there was no showing that Dr. Buckhout’s research has reached the level of general acceptance in the field of scientific inquiry” (117 Misc 2d, at p 593). Dr. Buckhout’s testimony was also excluded in People v Brown (124 Misc 2d 938, supra). In that case, the Honorable David S. Ritter, also of this court, held that such testimony would “not assist the jury in their evaluation of the testimony by the eyewitnesses” and would infringe upon their role as the determiner of reliability (124 Misc 2d, at p 940). These decisions by respected trial court colleagues properly reflect the exercise of *614 discretion in these matters to which all of the Appellate Divisions have referred. They do not stand for the proposition that expert testimony on the issue of eyewitness identification is never admissible.
There is only one appellate decision in this State on the precise issue before the court. In People v Valentine (53 AD2d 832 [1976], supra), the defendant argued that the trial court had erred in refusing to permit such expert testimony. The Appellate Division, First Department, rejected the argument, stating: “Expert opinions were not necessary to enable the jury to comprehend the potential for unreliability. Had the court permitted this witness to apply his experience to the particulars of this case it would have constituted a trespass on the jury’s domain.” (53 AD2d, at pp 832-833.)
Subsequent to the decision of the First Department in Valentine, however, the Court of Appeals held that it was erroneous as a matter of law for a court to exclude expert testimony on the basis of the ultimate issue rule, i.e., that it usurps the function of the jury. In People v Cronin (60 NY2d 430 [1983], supra), the court considered the defense offer of expert psychiatric testimony concerning the defendant’s ability to form the requisite intent, given the People’s proof that prior to the alleged burglary the defendant had ingested both alcohol and drugs. The court held that the trial court’s application of the ultimate issue rule resulted in its failure to exercise discretion, thus mandating reversal. The Court of Appeals reaffirmed the standard for the admissibility of expert testimony which it had previously enunciated: “The guiding principle is that expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror” (DeLong v County of Erie, 60 NY2d 296, 307; People v Allweiss, 48 NY2d 40; Selkowitz v County of Nassau, 45 NY2d 97).
A proper analysis of the propriety of expert testimony therefore involves inquiry into the relationship among: (a) the subject of the expert’s testimony; (b) the issue presented to the jury; and (c) the information possessed by the average juror.
Expert testimony, however, is not all of one genre. The Court of Appeals held long ago, in Dougherty v Milliken (163 NY 527), that a distinction must be drawn between experts who state what are essentially facts, although such as to be outside the knowledge of the layman, and those who render opinions. “It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible. To *615 the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury with all the facts before them can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. The distinction between these two kinds of testimony is apparent. In the one instance the facts are to be stated by the experts and the conclusion is to be drawn by the jury; in the other, the expert states the facts and gives his conclusion in the form of an opinion which may be accepted or rejected by the jury.” (163 NY, at p 533.) The court described the distinction more particularly as follows: “If the knowledge of the experts consists in descriptive facts which can be intelligently communicated to others not familiar with the subject, the case belongs to the first class. If the subject is one as to which expert skill or knowledge can be communicated to others not versed in the particular science or art only in the form of reasons, arguments or opinions, then it belongs to the second class.” (163 NY, at pp 533-534.)
This distinction has been more recently recognized in the advisory committee notes to the Federal Rules of Evidence. The committee states: “Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. [Rule 702] accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts. Since much of the criticism of expert testimony has centered upon the hypothetical question, it seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when counsel believes the trier can itself draw the requisite inference.” (Fed Rules Evidence, rule 702 [in 28 USC, Appendix], Advisory Committee Note, p 25.) The official comment to the proposed New York Code of Evidence contains a similar statement: “The section specifies that the expert ‘may testify * * * in the form of an opinion or otherwise’. The expert is thus not required to testify in opinion form. The expert can, for example, give background information or provide data that was obtained *616 as a result of an examination, leaving the trier of fact to draw its inference or conclusion from the evidence presented.” (Proposed Code of Evidence for State of New York § 702, comment, p 164.)
Most expert testimony clearly falls within the second class. The expert is offered because it is the conclusion to be drawn from the facts, and not the facts themselves, which requires expertise. The expert testimony in Dougherty (supra), however, involved both. The experts were asked first to describe the design of the derrick in question and then to render an opinion as to the sufficiency of that design. The Court of Appeals held that the former was a proper question, since the manner in which the derrick was designed was not a matter of common knowledge. The latter question was impermissible, however, because given the relevant specialized facts, the jury was capable of determining the sufficiency of the design.
A similar question was presented in a criminal context in People v Parks (41 NY2d 36). In Parks, the issue was whether the trial court had improperly received the testimony of the complainant’s teacher with respect to the complainant’s mental condition and capacity to testify. Noting that the teacher was “restricted by the court to testimony of an objective nature” (41 NY2d, at p 48), the Court of Appeals refused to reverse the conviction. The court stated: “As we view the issue, independent testimony with respect to a witness’ faculties is designed to provide the jury with an objective analytical framework for evaluation of the witness’ testimony. The court may not permit the independent witnesses to stray from scientific and objective data and criteria. Thus, it would be error for the court to permit a witness to express a view as to the credibility or believability of the impaired witness. Notably, this case does not involve a situation where the independent witness attempted to express a view, scientific or otherwise, on the degree of confidence, or lack thereof, to be placed upon the complainant’s testimony. By our holding today, we do not suggest, or even intimate, that an expert may ever pass his own judgment on a witness’ credibility and impart that judgment to the jury. Such testimony would be a serious usurpation of the jury’s prerogative and responsibility. We do hold that objective data can be related to the jury to assist it in performing its proper trial function. Although this precise issue has received scant attention from the authorities (compare 2 Wigmore, Evidence [3d ed], § 497, p 589, with Richardson, Evidence [10th ed], § 389, p 368), we are convinced that sophisticated and modern techniques of physical and psychological evaluation and analysis may play an appropriate but limited *617 role in the trial of cases pursuant to well-founded concepts of the law of evidence.” (41 NY2d, at p 48.)
Dr. Buckhout’s testimony, when limited to a discussion of those factors which the scientific studies and reports have shown are relevant in determining the reliability of eyewitness identification testimony, is essentially akin to that which was held to be admissible in Parks. If he were permitted to offer an opinion as to the reliability of the testimony of the complainant in this case or as to the reliability of eyewitness identification testimony in general, however, he would be venturing into an area where the jury is fully capable of reaching its own result. He will, therefore, take the stand as a live learned treatise on the subject of eyewitness identification to assist the jury by bringing to their attention scientific studies with which they would not otherwise be familiar. Admittedly, Dr. Buckhout’s testimony will involve more than just a recitation of facts or description of studies which have been done. He will be called upon to draw from all of the scientific studies the conclusion that certain factors are or are not relevant to determining the reliability of eyewitness identification testimony. However, he will give no opinion with respect to the basic issue as to which his testimony is relevant, the reliability of the complainant’s testimony. On that issue, the jury will draw its own conclusion.
The expert testimony to be permitted here is essentially the same as the testimony found to be admissible by the Court of Appeals in Kulak v Nationwide Mut. Ins. Co. (40 NY2d 140). Kulak was an action against an insurer for failure to settle a liability claim within the policy limits. As part of her direct case, the plaintiff introduced the testimony of two experienced trial attorneys as experts in the field of personal injury litigation. These witnesses were asked first to describe the factors they considered relevant to settlement of a personal injury action and then to give an opinion, in response to a hypothetical question, as to the merits of the defenses and the likely verdict in the personal injury action. They were then asked whether, in their opinions, the insurer’s evaluation of the case for settlement purposes was realistic and “whether in general it was possible for an attorney retained by the insurer adequately to represent the interests of an insured sued for an amount in excess of policy limits, if the carrier does not inform that attorney what the policy limits are” (40 NY2d, at p 145). Over objection, the witnesses were permitted to answer each of these questions.
The Court of Appeals held that expert testimony such as this was admissible in part and inadmissible in other part. The court stated:
*618 “In perspective we distinguish between testimony that relates to automobile accident actions in general and testimony that is addressed to the individual action on which this excess liability claim is predicated in particular * * * [T]he witness should be permitted to identify considerations relevant to the assessment of personal injury claims by insurers in general and then to describe the materiality and weight customarily ascribed to each. So, in this case, the testimony as to factors to be considered in evaluating a personal injury case for settlement was admissible * * *
“This principle, however, would not cover the testimony elicited in response to the hypothetical questions addressed to plaintiff’s expert witnesses * * * In these instances the questions were focused precisely on this particular case, and did not seek an expression of expert opinion generally with respect to defenses based on intoxication, on contributory negligence, or on assumption of the risk. The attorney witnesses were invited and permitted to express opinions as to the significance of such considerations in this particular case and that the recovery would exceed policy limits * * * In our view in thus presuming to apply general experience to the particulars of this individual case, the witnesses trespassed on the jury’s domain. Accordingly, such testimony was inadmissible” (40 NY2d, at pp 146-147).
The court went on to state that once the jury was informed of the factors relevant to analysis of personal injury actions, it was within their competence to evaluate the worth of the personal injury action in question. The critical focus, as can be seen from the analysis in Kulak, is upon the precise issue to which the testimony of the expert is addressed. As the Court of Appeals stated in People v Cronin (60 NY2d 430, 433, supra), where the jury “would be benefited by the specialized knowledge of an expert witness” his testimony will be admissible; otherwise it will not.
While it is no doubt true that all jurors have some everyday experience which is relevant to determining the reliability of eyewitness identification testimony, this does not preclude the introduction of expert testimony on the subject. In Selkowitz v County of Nassau (45 NY2d 97), a personal injury action resulting from a high-speed police chase, the plaintiff was permitted to introduce the testimony of a former police captain as an expert on emergency traffic procedures. The Court of Appeals recognized that “the average juror is quite familiar with the everyday rules of the road” (45 NY2d, at p 102), but sustained the *619 admission of the expert testimony anyway, reasoning that the issue before the jury involved proper police conduct in a high-speed chase, a subject upon which the jurors had no relevant experience. Similarly, in the case at bar, most jurors are familiar with the process of identifying and recognizing other people. Few, if any, however, have been victims of crimes, and therefore most can only presume what factors are relevant to making a valid identification in that situation. Presenting the jury with whatever scientific study is available with respect to determining these factors will certainly result in a better-informed decision.
This is especially true where the scientific evidence is not in accord with common perceptions. According to the offer of proof, Dr. Buckhout will testify, among other things, that there is not necessarily a correlation between the reliability of identification testimony and the confidence of the witness in that identification; that it is a myth that recall is enhanced by the violence of a situation; that recall is affected by the selectivity of the initial perception and a phenomenon which involves filling in the details through after-acquired experience. These and other items of Dr. Buckhout’s testimony will bring to the attention of the jury certain relevant factors of which they might not otherwise have been aware.
The People contend, however, that Dr. Buckhout’s testimony is not so reliable or worthy of belief that the jury will be better able to evaluate the complainant’s testimony than it would have been had it merely listened to the arguments of counsel and relied on its own experience. It is true that in the past similar testimony has been excluded because it was not generally accepted in the scientific community (see, United States v Fosher, 590 F2d 381, supra; People v Brown, 117 Misc 2d 587, supra). In so arguing, however, the People fail to perceive the distinction between the standard for admissibility and the question of the weight to be accorded to the testimony (cf. People v Yazum, 13 NY2d 302). The bulk of the studies in this field have been conducted since the early decisions excluding this testimony were made. After an exhaustive review of the scientific literature, the Supreme Court of California concluded that “[t]he consistency of the results of these studies is impressive, and the courts can no longer remain oblivious to their implications for the administration of justice” (People v McDonald, 37 Cal 3d 351,_, 690 P2d 709, 718, supra). Considering this finding, and the facts that, according to his résumé, Dr. Buckhout has testified on numerous occasions and that he and others have compiled a significant mass of scholarly material on this subject, *620 this court is convinced, in the absence of independent proof on the issue from the People, that a sufficient showing of reliability has been made to present this testimony to the jury. The People will, of course, be able to test Dr. Buckhout’s testimony through cross-examination and by expert testimony in rebuttal, if they deem that appropriate.
The fact that this type of testimony is somewhat novel should not preclude its admission into evidence. In De Long v County of Erie (60 NY2d 296, supra), the Court of Appeals affirmed the admission of expert testimony on this issue of the monetary value of a housewife’s services. The court stated: “Although it was once thought that this was not a subject which would lend itself to scientific inquiry and analysis [citation omitted], that can no longer be said today. It is now apparent, as a majority of courts have held (see Ann., 77 ALR3d 1175), that qualified experts are available and may aid the jury in evaluating the housewife’s services * * * We conclude that it was not an abuse of discretion to allow the expert testimony in this case.” (60 NY2d, at pp 307-308.)
The People argue correctly that Dr. Buckhout’s testimony will be prejudicial to their case. In a sense, however, this is true of all testimony which tends to disprove a party’s contention. It is only undue prejudice which the law prohibits. While it is true that the testimony of Dr. Buckhout will lend a certain aura of reliability to the contentions which defense counsel ordinarily makes in summation, this effect is not so substantial that a manifest injustice will result. The jury is still free to accept or reject Dr. Buckhout’s testimony, in whole or in part, and will be so instructed. In similar circumstances, the People have been allowed to introduce expert testimony on the subject of “rape trauma syndrome” (see, People v Fisher, 53 NY2d 907). Essentially, this allows the People to bolster in advance the less than certain testimony of a rape victim with scientific evidence that the psychological trauma caused by the rape prevented her from coming forward immediately. The prejudice to the People resulting from Dr. Buckhout’s testimony would be no greater than that suffered by the defendant confronted with rape trauma syndrome testimony. Furthermore, the defendant’s constitutional right to due process of law includes the right to present any relevant evidence in his behalf (see, People v Gilliam, 37 NY2d 722, revg 45 AD2d 744, on dissenting opn of Hopkins, J.; People v Scott, 104 AD2d 667); the People benefit from no such protection.
In the final analysis, it is for the jury to determine, on the basis of all of the evidence in the case, including the expert *621 testimony, whether the eyewitness identification made by the complainant is reliable. This court cannot subscribe to the view that permitting the limited expert testimony that will be allowed in this case will either usurp the function of the jury or infringe upon its role as determiner of the facts. To the contrary, to the extent that this testimony brings to the attention of the jurors relevant matters of which they were not previously aware, it can only enhance the ability of the jury to reach a reasoned decision on the difficult issues which are presented to it. Despite all of the talk that the proffered testimony is an attempt to create a “smokescreen” defense or to confuse the jury into seeing a reasonable doubt where there is none, this court is confident, after years of experience with jury trials in this county, that the jury is fully capable of perceiving the real issues .in the case and resolving them in a rational and just manner.
Accordingly, this court concludes that as a matter of law expert testimony with respect to the factors affecting the reliability of an eyewitness identification may be admitted into evidence in this State, and that in the exercise of discretion it will be so admitted in this case. The People’s cross motion is denied to the extent indicated herein.
The testimony of Dr. Buckhout, the defense expert on eyewitness identification testimony, will therefore be permitted at this trial only to the extent that it is limited to a discussion of the facts which scientific research has shown are relevant to determining whether a reliable eyewitness identification has been made. He will not be permitted to venture any opinion as to the reliability of eyewitness identification testimony in general or the credibility or reliability of the testimony of any witness in this case. He will specifically be precluded from offering any testimony as to his assertion that laymen place an undue emphasis on identification testimony in general or that cross-examination is not effective to discern unreliability because the witness truly believes he is telling the truth. The defendant should consider himself forewarned that upon objection by the People, any intrusion into these prohibited areas will be prevented.
In closing, the court notes that it is not unmindful of the practical difficulties this ruling may cause or the financial burden it may impose upon criminal defense budgets.* The *622 potential for abuse, however, is no reason to deny to this defendant the right to present his defense fully. Although identification is an issue in every criminal case, the number of cases in which testimony of this kind would be truly helpful to the defense is minimal. The good judgment of counsel will be sufficient to prevent these few cases from being subsumed in a morass of needless testimony.

 An interesting discussion of judicial concern over the emergence of a new cottage industry of psychological experts who will be called to testify in every case involving eyewitness identification testimony is contained in footnote 27 to the court’s decision in Downing (753 F2d 1224, 1243, supra).