OPINION OF THE COURT
Bruce D. Alpert, J.
The defendants have moved this court for a ruling in limine whether an "expert” will be permitted to testify with respect to the reliability of eyewitness identification. While only defendant Schor has submitted memoranda in support of the relief requested, the other two defendants have also joined in *637 his application. The defendants’ motion is hereby denied for the reasons cited herein.
FACTS
On October 1, 1985, the defendants were arrested and charged with two counts of assault in the third degree.
Wade and Huntley hearings were held wherein the facts of this case were reported by the Honorable Jerome Medowar as follows:
"Mr. Comparetto and Mr. Picarella were assaulted by ten unknown assailants at the McHebe’s Depot Restaurant on Hempstead Turnpike, Hempstead, New York. The complainants went to the Hofstra Public Safety Office (PS) headquarters seeking assistance, since they believed that their assailants were Hofstra University students. Mr. Boyle, presently in charge of the PSO, allowed the victims to look at I.D. photos of Hofstra students.
"Both Mr. Comparetto and Mr. Picarella testified at the Wade-type hearing that each complainant made an independent identification of a defendant from the photographs and was one-hundred percent sure the identification was accurate before showing the photo to the other complainant. There was no testimony that indicated that the complainants talked to each other about possible defendants during the identification procedure.
"Mr. Boyle brought the two complainants to the athletic department at Hofstra where they viewed photos of football players and identified another of the defendants. Again, the complainants testified that they identified the third defendant in the same manner as in the Hofstra PSO.
"On October 1, 1985, Police Officer McGowan arrested the three defendants at Hofstra and brought them to the Hemp-stead Police Precinct. The defendants were advised of their Miranda rights at the precinct by Police Officer McGowan. Police Officer McGowan testified at the Huntley hearing that defendant Horan stated that he was willing to talk without his attorney present. Defendant Horan was not intoxicated and he understood the meaning of the Miranda warnings which were read to him. Police Officer McGowan testified that Defendant Horan stated that he was engaged in words with Mr. Comparetto and pushed Mr. Comparetto, and the defendant Hennessey jumped in to break up the fight.” (Aug. 28, 1986.)
*638 LEGAL ANALYSIS
It is the defendants’ contention that they are the victims of a mistaken identification by both eyewitnesses, the complainants hereto. The defendants have requested that the court permit Dr. Robert Buckhout to testify in this regard. Dr. Buckhout is a psychologist and holds himself out as an "expert in the field of perception, memory and the vagaries of eye-witness identification”.
The defendants’ arguments rests heavily with a similar case in the County Court, Westchester County (People v Brooks, 128 Misc 2d 608, 609) wherein the court permitted Dr. Buckhout to testify with respect to:
"factors which studies have shown are relevant to the reliability of an eyewitness identification. These factors include:
"(1) the delay between the event and the identification;
"(2) stress;
"(3) the violence of the situation;
"(4) assimilation of postevent information;
"(5) the cross-racial aspect of the identification;
"(6) the selectivity of perception;
"(7) the 'filling in’ phenomenon;
"(8) expectancy;
"(9) the effect of repeated viewings;
"(10) the lack of a correlation between confidence and reliability;
"(11) the motivation of the victim to make a correct identification;
"(12) the motivation of the police to make an arrest;
"(13) the introduction of suggestiveness through photo arrays;
"(14) the availability of a 'zero option’; and
"(15) the effect of what a witness is told after the identification is made.
"He is also prepared to testify that laymen place an undue emphasis on identification testimony in general and that cross-examination is not effective to discredit a mistaken identification because the witness truly believes that his testimony is accurate, even if it is not. According to the defense memorandum of law, Dr. Buckhout will specifically not venture any opinion as to the validity of eyewitness identification *639 testimony in general or as to the reliability of the identification testimony in the case at bar.” (People v Brooks, supra, at 609-610.)
The admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court. (People v Cronin, 60 NY2d 430 [1983], citing Selkowitz v County of Nassau, 45 NY2d 97.)
It is a well-settled legal principle that the opinion of an expert in a specific field is admissible due to the necessity of receiving such evidence. "Where the subject matter to be inquired about is presumed not to be within common knowledge and experience, and where legal inference predominates over statement of fact, expert opinion based on suitable hypothesis is required to furnish the basis for a determination by the ordinary jury; but where the matters are within the experience and observation of the ordinary jurors, from which they may draw their own conclusions, and the facts are of such a nature as to require no special knowledge or skill, the opinion of experts is unnecessary.” (58 NY Jur 2d, Evidence and Witnesses, § 631, and the cases cited therein.)
"In a sense, opinion testimony of an expert witness necessarily enters upon the jury’s province, since the expert — and not the jury — draws conclusions from the facts, which the jury is then asked to adopt. Such testimony, however, is admissible where the conclusions to be drawn from the facts 'depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence.’ (Dougherty v Milliken, 163 NY 527, 533; De Long v County of Erie, 60 NY2d 296.)” (People v Cronin, supra, at 432.)
The opinion of nonexpert witnesses has been held admissible with respect to the identity of a person. Nevertheless, expert testimony has been necessary to interpret results of scientific tests regarding the identification of a person through voice prints, hairprints and exemplars. (See, People v Rogers, 86 Misc 2d 868 [1976]; People v Allweiss, 48 NY2d 40 [1979].)
It is for this court to determine whether the jurors will be able to draw conclusions from the evidence based on their day-to-day experience, their common observations and the knowledge they bring with them, and whether they would benefit by the specialized knowledge of an expert witness. (People v Cronin, supra, at 433.)
In the Cronin case (supra), the trial court failed to exercise its discretion as it erroneously thought that it had no discre *640 tian to exercise. Accordingly, the court permitted a psychiatrist to testify generally with respect to the defendant’s condition in view of his ingesting drugs and alcohol. The court prohibited the witness from giving an expert opinion about the defendant’s ability to form intent as this testimony would "usurp the jury’s function.” (People v Cronin, supra, at 433.)
The Court of Appeals, reversing the Appellate Division’s affirmance of the trial court, held that the trial court could have properly found the psychiatrist’s testimony admissible regarding the subject of intent.
"While jurors might be familiar with the effects of alcohol on one’s mental state, the combined impact of a case of beer, several marihuana cigarettes and 5 to 10 Valium tablets on a person’s ability to act purposefully cannot be said as a matter of law to be within the ken of the typical juror.” (People v Cronin, supra, at 433.)
Similarly, in People v Brooks (supra) the trial court permitted psychologist Dr. Buckhout to testify with respect to the reliability of eyewitness identification testimony, limiting the testimony to the factors enumerated heretofore.
In his decision, the Honorable Kenneth H. Lange of the Westchester County Court concedes the fact that the New York courts, which have had to consider the issue at bar, have not been inclined to the admission of expert testimony on the subject of eyewitness identification. Other jurisdictions have been more favorably disposed to admit such testimony.
"In People v Brown (117 Misc 2d 587, supra), the Honorable Nicholas Colabella of this court considered Dr. Buckhout’s testimony for purposes of the Wade hearing, finding it to be 'interesting and in some respects helpful’ (117 Misc 2d, at p 592), but refused to permit it at the trial. Judge Colabella reasoned that although Dr. Buckhout appeared to be qualified as an expert and the subject of his testimony 'may not be within the common knowledge of a jury * * * there was no showing that Dr. Buckhout’s research has reached the level of general acceptance in the field of scientific inquiry’ (117 Misc 2d, at p 593). Dr. Buckhout’s testimony was also excluded in People v Brown (124 Misc 2d 938, supra). In that case, the Honorable David S. Ritter, also of this court, held that such testimony would 'not assist the jury in their evaluation of the testimony by the eyewitnesses’ and would infringe upon their role as the determiner of reliability (124 Misc 2d, at p 940). These decisions by respected trial court colleagues properly *641 reflect the exercise of discretion in these matters to which all of the Appellate Divisions have referred. They do not stand for the proposition that expert testimony on the issue of eyewitness identification is never admissible.” (People v Brooks, supra, at 613-614.)
While this court recognizes the rationale by Justice Lange in People v Brooks (supra) for the admission of Dr. Buckhout’s testimony, it does not adhere to it.
The Brooks case (supra) is distinguishable from the case at bar. The defendant in Brooks had been accused of the crimes of rape in the first degree and sexual abuse in the first degree. These are both heinous crimes, which would give rise to perhaps an emotional and psychologically impaired victim. Thus, the reliability of the eyewitness identification could be in issue. Therefore, the factors which the scientific studies and reports have shown to affect the reliability of eyewitness testimony might be applicable.
Each court must exercise its discretion, on an ad hoc basis, depending upon the nature of the crime charged, the purpose for which the testimony is being offered and whether an expert opinion is necessary to enable the jury to more fully comprehend the subject matter.
The defendants herein have been charged with two counts of assault in the third degree, a class A misdemeanor. It is not likely that the complainants have been emotionally or psychologically scarred to the potential degree that the complainant could have been in Brooks (supra).
The reliability of the eyewitness identification of the defendants herein shall remain within the province of the jury. If this court were to permit Dr. Buckhout to apply his experience to the particulars of this case it would constitute a trespass upon the jury’s domain. (People v Valentine, 53 AD2d 832 [1st Dept 1976].) The jury in the instant case would not be benefited by the specialized knowledge of Dr. Buckhout. (People v Cronin, supra.) All jurors have some everyday experience which will help them in determining whether the eyewitness identification is, in fact, reliable. Similarly, in the case at bar, most jurors are familiar with the process of identifying and recognizing other people. Few, if any, however, have been victims of crimes, and therefore most can only presume what factors are relevant to making a valid identification in that situation. (People v Brooks, supra, at 619.) This issue may be relevant with respect to the victim of a rape or a victim of *642 sexual abuse. This is however, distinguishable from the victim of a simple assault.
It is apparent to this court that Dr. Buckhout’s testimony is not necessary in the instant case. The jury is quite capable of determining whether the eyewitness identification is reliable without the introduction of expert testimony in this regard.
CONCLUSION
Accordingly, while this court concludes that as a matter of law expert testimony with respect to the factors affecting the reliability of an eyewitness identification may be admitted into evidence in this State, the court in the exercise of its discretion will not admit such expert testimony in the case at bar.