OPINION OF THE COURT
Robert Charles Kohm, J.
Defendant, in two separate indictments, is charged with a series of sexual assaults on young women in the County of Queens.
On March 31, 1999, the defendant sought to introduce the testimony of two expert witnesses, and his application was denied. Since the relief sought was novel, the court will amplify its decision in the following memorandum.
I. THE EXPERT WITNESSES
Defendant requests the testimony of two expert witnesses. The first application seeks the use of an expert witness in the field of voluntary confessions, designated as a “voluntariness” expert. The second seeks a similar order granting the use of an expert witness on police procedure. The court will consider each application on its own merits.
II. THE “VOLUNTARINESS” EXPERT
The initial request would allow a psychologist to testify as an expert witness with respect to the reliability of confessions derived from custodial police interrogation. The proposed expert has a Ph D in psychology and a Juris Doctor. As for practical experience, the witness has a specialty in the field of clinical psychiatry and also has spent a significant amount of time meeting and diagnosing the defendant.
The law regarding expert witnesses is well settled. To start with, the admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court. (People v Cronin, 60 NY2d 430.) Legally, an “expert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror.” (De Long v County of Erie, 60 NY2d 296, 307.)
The role of an expert witness was succinctly stated in People v Schor (135 Misc 2d 636, 639), when the court noted: “the opinion of an expert in a specific field is admissible due to the necessity of receiving such evidence. ‘Where the subject matter *936 to be inquired about is presumed not to be within common knowledge and experience, and where legal inference predominates over statement of fact, expert opinion based on suitable hypothesis is required to furnish the basis for a determination by the ordinary jury; but where the matters are within the experience and observation of the ordinary jurors, from which they may draw their own conclusions, and the facts are of such a nature as to require no special knowledge or skill, the opinion of experts is unnecessary.’ (58 NY Jur 2d, Evidence and Witnesses, § 631, and the cases cited therein.)”
In the present case, the psychologist’s testimony would allegedly aid the jury in determining the voluntariness of defendant’s confession in light of the penitent “atmosphere in which [it was] taken and highly suggestive state of defendant’s mind at the time.” In addition, the purported expert would explore the defendant’s past history with the police department stemming from a bitter divorce and show how his contact with the police created an atmosphere of fear in the interrogation of the defendant. Finally, counsel maintains that the expert testimony is necessary to his defense since the average person does not possess the requisite knowledge to judge the voluntariness of defendant’s statements without the aid of such expert testimony. Basically then the witness would testify on the voluntariness of defendant’s statements in light of his past history, including marital problems, prior police contacts and other relevant factors pertinent to this case.
Defendant cites no New York case as authority for the use of an expert medical witness in the area of voluntary confessions but maintains that the doctrine set forth in United States v Shay (57 F3d 126 [1st Cir 1995]) should be applied. In that case, defendant was found guilty of aiding to blow up his father’s car. In proving its case, the Government utilized statements made by the defendant to the police, media and fellow inmates. Defendant argued that his statements were unreliable and should be disregarded. During trial, the defense attempted to call Dr. Robert Phillips, a psychiatrist who was prepared to testify that defendant suffered from a recognized mental disorder known as “pseudologia fantástica”. This disorder is sometimes known as Munchausen’s disease named after Baron von Munchausen, a German storyteller who wandered about the country spinning tall tales. Dr. Phillips was prepared to show that defendant would spin out a web of lies simply to place himself at the center of attention, creating fantasies to satisfy inner psychological needs.
*937 The District Court refused to permit expert testimony as regards the fantasy disorder, reasoning that the jury did not need such evidence on the issue of defendant’s credibility. The United States Court of Appeals, First Circuit, reversed the lower court, holding, inter alia, that the District Court’s ruling violated rule 702 of the Federal Rules of Evidence. The Court of Appeals reasoned that while a jury is generally able to assess the reliability of statements, it needed expert assistance to understand and evaluate the effects of this specific recognized mental disorder on reliability. While counsel concedes that the Federal Rules of Evidence do not bind this court, he maintains that the Shay reasoning should still be applied.
The People oppose the expert witness request. They argue that the voluntariness of a confession is not outside the understanding of an average juror. Expert testimony is admissible only to explain events outside the ken of the ordinary juror (People v Cronin, 60 NY2d 430, supra) and the facts of a confession are clearly within normal understanding. Also, confessions are the province of the jury and the Criminal Jury Instructions include a charge to the jury on this very point. Thus, whether a statement was “voluntarily made”, and whether a statement is truthful are both issues of fact for the jury to determine (1 CJI[NY] 11.01).
Therefore, the prosecution reasons that since voluntariness of statements is within the range of a jury’s experience and its determination rests with that body as a matter of law, there is no need of expert testimony on the voluntariness of defendant’s confession in this case.
III. STANDARD OF ADMISSIBILITY
New York has a twofold test for the admissibility of scientific expert evidence. The first requirement is that the opinion testimony “depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence” (Dougherty v Milliken, 163 NY 527, 533; see also, People v Allweiss, 48 NY2d 40, 50). The second is that such “expert testimony be based on a scientific principle or procedure which has been ‘ “ ‘sufficiently established to have gained general acceptance in the particular field in which it belongs’ ” ’ ” (People v Wernick, 89 NY2d 111, 115). In the present case, defendant seeks to offer a voluntariness expert, that is, a medical witness who would testify with respect to the reliability of confessions. In support of this application, defendant offers an article printed in the winter 1998 edition of the Journal of Criminal *938 Law and Criminology (88 J Crim L & Criminology 429) by Professors Richard A. Leo and Richard J. Ofshe. The article, entitled The Consequences of False Confessions: Deprivations of Liberty and Miscarriages of Justice in the Age of Psychological Interrogation, deals with the reality of false confessions in the American justice system and their consequences.
It appears then that the expert witness, specializing in the field of voluntary confessions derived from custodial police interrogations, would testify to factors relevant to the reliability of a defendant’s admissions. These factors would touch upon two areas: (a) the general nature of false confessions, and (b) defendant’s personal history and its relationship to his confessions. As for the general nature of confessions, based upon the submitted article, the testimony would deal with:
(1) the psychological factors affecting confessions;
(2) the frequency of false confessions;
(3) the failure of the police to verify such confessions;
(4) the general tendency of prosecutors to cease investigating a crime once a confession has been obtained;
(5) the harm caused to society and individuals by coerced or false confessions.
As for defendant’s prior history, the witness would testify as to:
(1) defendant’s prior relationships with the police department;
(2) the “penitent” atmosphere in which confessions were obtained;
(3) the highly suggestive state of defendant’s mind at the time;
(4) the validity of the confession in light of “police created” fear present in the custodial interrogations.
While there are no reported cases on the use of a psychologist as an expert witness in regard to the factors influencing the voluntariness of a defendant’s confession, there have been similar cases dealing with factors affecting memory and resulting identifications.
A review of these cases indicates mixed results. In People v Brooks (128 Misc 2d 608) a memory specialist, Dr. Robert Buckhout, was allowed to testify only as to relevant scientific facts, but could not give an opinion as to reliability in general or any witness in the case. This limited result was followed in People v Lewis (137 Misc 2d 84) and People v Beckford (141 Misc 2d *939 71). However, the courts refused to admit such expert testimony in People v Brown (117 Misc 2d 587), People v Schor (135 Misc 2d 636, supra), and People v Wong (150 Misc 2d 554). These cases stressed the fact that the jury would not benefit from such witness and also that his testimony would infringe on the jury’s fact-finding role.
There has been one Court of Appeals case touching on Dr. Buckhout’s expert testimony as to the psychological factors affecting eyewitnesses’ perception and memory. That case, People v Mooney (76 NY2d 827), affirmed a First Department, Appellate Division, ruling (151 AD2d 1054) which upheld a lower court’s denial of the proposed testimony of Dr. Buckhout as an expert witness on memory perception. The Court of Appeals in the Mooney case ruled that the trial court had the discretion to admit or reject such expert testimony based on the Cronin “sound discretion” test. This test holds that: “It is for the trial court in the first instance to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefitted by the specialized knowledge of an expert witness.” (People v Cronin, 60 NY2d, supra, at 433.)
However, it should be noted Judge (now Chief Judge) Judith S. Kaye in a strong dissent pointed out that the trial court’s reasons for denying the expert witness’ testimony was based on unelaborated reasons which did not explore any trial particulars. The dissenting opinion also indicated that since scientific data on cognitive factors was now quite uniform and well documented, the lower court should have based its ruling on a discretionary assessment of the probative value of the testimony in relation to the facts of the case.
With this legal background, the court turns to the two requirements for the admissibility of scientific expert evidence. The first is scientific knowledge beyond the range of ordinary training; the second is that the expert testimony be based on a scientific principle “ ‘sufficiently established to have gained general acceptance in the particular field in which it belongs.’’ ” (People v Wesley, 83 NY2d 417, 423, quoting Frye v United States, 293 F 1013, 1014.)
It would appear that the first requirement has been satisfied since the proposed expert has a Ph D in psychology, a Juris Doctor and has a speciality in clinical psychiatry.
The second requirement requires general acceptance in the scientific community. As has been pointed out, defendant has *940 cited no New York cases in support of the novel relief sought, but instead relies on United States v Shay (57 F3d 126, supra). Novelty, in and of itself, is not a barrier to legal relief since changing times require fresh approaches. However, novelty is a barrier to the introduction of scientific legal evidence since if such evidence is novel, it clearly has not yet been evaluated by the scientific community and, thus, would lack general professional acceptance (see, People v Wesley, supra, at 423).
In the Shay case (supra), the defendant sought to introduce expert psychiatric testimony on a recognized mental disorder, Munchausen’s disease. This, in turn, would have a direct bearing on defendant’s erratic behavior in regards to making damaging and unrequested admissions. The request in ,the Shay case was made for specific relief based on a medically recognized mental disorder. The present case is quite different. Here, defendant’s attorney seeks to introduce a psychologist who will testify on the general nature of voluntary custodial statements, their abuses and the susceptibility of defendant to police interrogations based on his past history. While this may provide a jury with a general analytical framework for evaluating the voluntary nature of admissions, defendant has not shown any specific scientific tests, recognized procedures or findings which would assist the jury in dealing with the reliability of such statements. At best the jury would be simply speculating on the value of the expert testimony, not utilizing it based on accepted scientific principles.
Lacking this general scientific acceptance, this court finds that the submitted documentation is insufficient to constitute a recognized and accepted scientific basis to grant the relief sought. The application to appoint a “voluntariness” expert witness is, therefore, denied.
IV. EXPERT WITNESS ON POLICE PROCEDURE
Defendant next seeks to introduce the testimony of an expert witness on proper police procedure in the investigation of cases. This proposed expert is a highly decorated former New York City police detective and hostage negotiator who has appeared on television programs. The purpose of such an expert witness is to illustrate to the jury the “straying” of the detectives involved in this case from accepted police practice in regards to normal police investigation. Specifically, this expert witness would testify on the retention of physical evidence, the storage and chain of custody of physical evidence and the impermissible use of defendant’s ex-wife in this case.
*941 In essence, defendant seeks the use of an expert witness on police procedure to assist the jury in understanding normal investigatory procedures, citing Selkowitz v County of Nassau (45 NY2d 97).
In considering this application, it is clear that the District Attorney has the duty of prosecuting crimes within his county (County Law § 700 [1]) and has “broad discretion in determining when and in what manner to prosecute a suspected offender.” (People v Di Falco, 44 NY2d 482, 486.) Since it is the duty of the District Attorney to try any such case, his prosecuting trial strategy can only be perceived in the actual context of the trial itself. Therefore, at the present time, any discussion as to evidence, the detectives’ investigation or police procedure is speculative. This being the case, this court finds that defendant has failed to demonstrate specific facts which would establish “the relevance of the proposed testimony to [this particular] case” (see, People v Mooney, 76 NY2d, supra, at 833 [Kaye, J., dissenting]). Hence the application regarding the expert on police procedure is denied.
The application for the use of the “voluntariness” expert and the police procedure expert as expert witnesses in this case is denied in all respects.